IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 84-333

STATE OF MONTANA, ex rel.
MIKE GREELY, Attorney General,

Relator,

v.

WATER COURT OF THE STATE OF
MONTANA, and the Honorable W. W.
Lessley, Chief Water Judge, et al.,

Respondents.

FILED

JAN 14 1985

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

O R D E R

PER CURIAM:

On December 18, 1985, this Court entered its Opinion in this cause. It has since been discovered that two clerical errors appear therein.

IT IS HEREBY ORDERED that the Opinion of this Court in this cause dated December 18, 1984, is amended as follows:

On page 4, line 2, the citation to "§ 83-2-701, MCA" is deleted and "§ 85-2-701, MCA" is substituted therefor.

On page 17, second paragraph under subsection (5), the citation "§ 85-2-803(3), MCA" is deleted and "§ 85-2-702(3), MCA" is substituted therefor.

The Clerk is directed to mail a true copy hereof to counsel of record for all parties.

DATED this 14th day of January, 1985.

No. 84-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

STATE OF MONTANA, ex rel.,
MIKE GREELY, Attorney General,

Petitioner,

vs.

WATER COURT OF THE STATE OF MONTANA,
and the HON. W. W. LESSLEY, Chief Water Judge, et al.,

Respondents.

_____

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Petitioner:

Hon. Mike Greely argued, Attorney General, Helena,
Montana
Chris Tweeten argued, Assistant Attorney General,
Helena,, Montana

For Respondents:

Sarah Arnott argued, Bozeman, Montana
Hon. W. W. Lessley, Chief Water Judge, Bozeman, Montana
Hon. B. W. Thomas, District Judge, Chinook, Montana
Hon. Robert M. Holter, District Judge, Libby, Montana
Hon. Roy C. Rodeghiero, District Judge, Roundup, Montana

For Amicus Curiae:

James H. Goetz argued, Salish and Kootenai Tribes,
Bozeman, Montana
Blake Watson argued, U.S. Dept. of Justices for Fed.
Agencies, Washington, D. C.
Daniel F. Decker, Pablo, Montana
Jeanne S. Whitening, Boulder, Colorado
Robert S. Pelsyger, Boulder, Colorado
Frances Lame Bull, Billings, Montana
Edward L. Meredith, Billings, Montana
Joseph R. Membrino, Washington, D. C.
Joseph J. McKay, Browning, Montana
Reid Peyton, Washington, D. C.
Philip E. Roy, Browning, Montana
Thomas E. Luebben, Albuquerque, New Mexico
Allen E. Rowland, Lame Deer, Montana
Norman Hollow, Poplar, Montana

AMICUS CURIAE CONTINUED:

Donald Stewart, Crow Agency, Montana
Joseph Felsman, Pablo, Montana
Earl Old Person, Browning, Montana
Franklin R. Perez, Harlem, Montana
John Windy Boy, Belcourt, North Dakota
William H. Veeder, Washington, D. C.

Submitted: October 26, 1984

Decided: December 18, 1984

Filed: ⁙ ⁙ 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Attorney General for the State of Montana, pursuant to Rule 17, M.R.App.Civ.P., has petitioned this Court for an exercise of its supervisory power over the Water Court of the State of Montana and the judges of that court, in their conduct of the litigation commenced in this Court pursuant to section 85-2-211, MCA, under cause no. 14833. The questions as presented in that application were:

1. Notwithstanding the so-called "disclaimer clause" in Article I of the Montana Constitution, does the Montana Water Court have jurisdiction, as a matter of state law, to adjudicate federal reserved water rights held by the United States in trust for Indians and Indian tribes in the State of Montana?

2. Is the water adjudication process provided in the Montana Water Use Act, Title 85, Chapter 2, MCA, legally adequate to adjudicate federal reserved water rights held by the United States in trust for Indians and Indian tribes in the State of Montana?

The Attorney General requested an ex parte opportunity to present oral argument on our acceptance of original jurisdiction. Such oral argument was presented before this Court by the Attorney General and by the attorney for the Confederated Salish and Kootenai Tribes, who requested leave to intervene as amicus curiae. This Court then ordered a briefing schedule granting to the respondent Water Court time in which to file a brief. Each and every Indian tribe in the State of Montana, the United States Attorney General, the United States Attorney for Montana, and the United States Department of Justice were also invited to file briefs as amici curiae. The Attorney General was directed to serve a true copy of his petition, the brief in support thereof, and

2

a copy of the Court's Order on the United States Attorney General, the United States Attorney for Montana, the United States Department of Justice, and all Indian tribes in Montana. On October 29, 1984, the matter was orally argued before this Court sitting en banc.

We have concluded that this Court will accept jurisdiction of the petition for writ of supervisory control of the Water Court.

I.

Is this Court barred from taking jurisdiction by § 85-2-217, MCA, which provides that all proceedings to generally adjudicate reserved Indian water rights and federal reserved water rights are suspended while the tribes are negotiating?

In 1973, the Montana legislature passed the Water Use Act to administer, control and regulate all water rights within the State of Montana and to establish a system of centralized records of all such rights. Section 85-2-101(2), MCA. The Act declared all waters within the state to be the property of the state and subject to appropriation for beneficial uses. Section 85-2-101(1), MCA. The Act defined state policy regarding Montana's water resources as follows:

> "It is the policy of this state and a purpose of this chapter to encourage the wise use of the state's water resources by making them available for appropriation consistent with this chapter and to provide for the wise utilization, development, and conservation of the waters of the state for the maximum benefit of its people with the least possible degradation of the natural aquatic ecosystems. . . ." Section 85-2-101(3), MCA.

In 1979, the Water Use Act was amended to specify that federal and Indian reserved water rights are included in the proceedings for the general adjudication of existing water rights, either as claims or by compact. The general intent

3

of the legislature regarding Indian reserved water rights is set forth in § 83-2-701, MCA:

"Legislative Intent. Because the water and water rights within each water division are interrelated, it is the intent of the legislature to conduct unified proceedings for the general adjudication of existing water rights under the Montana Water Use Act. Therefore, it is the intent of the legislature that the attorney general's petition required in 85-2-211 include all claimants of reserved Indian water rights as necessary and indispensable parties under authority granted the state by 43 U.S.C. 666. However, it is further intended that the state of Montana proceed under the provisions of this part in an effort to conclude compacts for the equitable division and apportionment of waters between the state and its people and the several Indian tribes claiming reserved water rights within the state."

At the same time that Part 7 (Indian and Federal Water Rights) was added to Title 85, Chapter 2, the Act was also amended to direct the Attorney General to begin the statewide proceedings as follows:

"Petition by attorney general. Within 20 days after May 11, 1979, the state of Montana upon relation of the attorney general shall petition the Montana supreme court to require all persons claiming a right within a water division to file a claim of the right as provided in 85-2-221." Section 85-2-211, MCA.

Pursuant to this section, the Attorney General petitioned this Court in cause no. 14833. The petition sought an order directed to all claimants of water rights, including Indian reserved water rights (§ 85-2-701, MCA) and this Court issued such an order (§ 85-2-212, MCA) in 1979. That Order required every person, including but not limited to an individual, partnership, association, public or private corporation, city or other municipality, county, state agency of the state of Montana and federal agency of the United States of America on its own behalf or as trustee for any Indian or Indian tribe, to file a statement of claim to an existing right arising prior to July 1, 1973.

4

Negotiations between the Montana Reserved Water Rights Compact Commission and several tribes were also commenced in 1979. See §§ 2-15-212, 85-2-701 & -702. We are advised that such negotiations are currently continuing between the Compact Commission and all but one Montana Indian tribe. Because such negotiations are now in progress, the question has been raised whether this Court's assumption of original jurisdiction violates the wording or intent of § 85-2-217, MCA, which provides:

> "While negotiations for the conclusion of a compact under part 7 are being pursued, all proceedings to generally adjudicate reserved Indian water rights and federal reserved water rights of those tribes and federal agencies which are negotiating are suspended. The obligation to file water rights claims for those reserved rights is also suspended. This suspension shall be effective until July 1, 1985, as long as negotiations are continuing or ratification of a completed compact is being sought. If approval by the state legislature and tribes or federal agencies has not been accomplished by July 1, 1985, this suspension shall terminate on that date. Upon termination of the supervision of this part, the tribes and the federal agencies shall be subject to the special filing requirements of 85-2-702(3) and all other requirements of the state water adjudication system provided for in Title 85, Chapter 2. Those tribes and federal agencies that choose not to negotiate their reserved water rights shall be subject to the full operation of the state adjudication system and may not benefit from the suspension provisions of this section."

Is the present request for supervisory control prohibited as a proceeding to generally adjudicate reserved Indian water rights? While not all members of this Court so agree, we conclude that this proceeding does not fall within the prohibitions of § 85-2-217, MCA.

The underlying action is cause no. 14833, an action for the adjudication of all existing water rights which was commenced in 1979 with the issuance of this Court's order. See §85-2-214(1), MCA. The petition before us now requests that we exercise our powers of supervisory control over the Water Court, which administers the Water Use Act. Our

5

supervisory control is directed toward that existing action and does not constitute a proceeding, "to generally adjudicate reserved Indian water rights." Section 85-2-217, MCA clearly prohibits such a proceeding while compact negotiations or ratification is continuing. This proceeding will not generally adjudicate any Indian reserved water right or any federal reserved water right, either as a whole or in part.

The petition for supervisory control asks this Court to define the scope of the State's jurisdiction over Indian reserved water rights and presents the preliminary question of whether the Water Court can conduct unified proceedings for the general adjudication of all existing water rights in Montana in the absence of a compact negotiation suspension. The issues before us are limited to a determination of the effect of our constitutional disclaimer on subject matter jurisdiction by the Water Court and whether the Water Use Act is adequate to adjudicate Indian reserved water rights. These questions should be determined before any further steps are taken to generally adjudicate Indian reserved rights.

We hold that the suspension provision of § 85-2-217, MCA does not prohibit our taking jurisdiction in this cause.

II.

What is the basis for this Court's assuming original jurisdiction of this petition for supervisory control?

In two recent cases, we have discussed at some length the reasons for our exercise of original jurisdiction. Grossman v. State, Dept. of Natural Resources (Mont. 1984), 682 P.2d 1319, 41 St.Rep. 804 (declaratory judgment proceeding); Montana Power Company v. Public Service Commission (Mont. 1984), ____ P.2d ____, 41 St.Rep. 1601 (request for supervisory control).

6

While Grossman is a declaratory judgment proceeding and the present proceeding is for supervisory control, the factors considered in taking of original jurisdiction are relevant and worthy of discussion here:

1. Grossman was recognized as a test case designed to obtain a final judgment on the constitutional validity of coal severance tax revenue bonds. In a comparable manner, the present application is designed to obtain a final judgment on the constitutional validity of the Water Use Act in view of the disclaimer clause contained in Art. I, Mont. Const. 1972. Both are legal questions presented for the first time in the proceedings before this Court.

2. Grossman sought this Court's interpretation of pure legal questions of statutory and constitutional construction. In a similar manner, the present petition seeks answers to pure legal questions of both constitutional and statutory construction of the disclaimer clause contained in Art. I, Mont. Const. and the Water Use Act in relation to Indian water rights.

3. In Grossman we concluded that urgency and emergency factors argued for acceptance of original jurisdiction. These factors included the inability of the state to issue proposed coal severance tax bonds until the issues raised were resolved by this Court. In a similar manner, until the issues here presented are resolved, the Water Court is unable to proceed with the general adjudication of water rights in Montana, including the water rights held by any Indian tribe or by the United States in any of its capacities. The Water Court is organized and prepared to proceed with the adjudication process. That process requires preliminary decrees, hearings, proof, argument, and ultimately final decrees. Since there are thousands of water right claimants in

7

Montana, it would be singularly inappropriate to wait until that entire process is completed and until an appeal of a final decree is made to this Court, before this Court addresses the threshold issues that are presented in the petition for supervisory control. These issues have been reserved by the federal courts for state court determination. See Arizona v. San Carlos Apache Tribe (1983), ____ U.S. ____, 103 S.Ct. 3201, 77 L.Ed.2d 837, 852; Northern Cheyenne Tribe v. Adsit (9th Cir. 1983), 721 F.2d 1187, 1188. If we wait until the appeal of final decrees, a great deal of time and expense could be wasted. These factors of time and cost demonstrate an urgency for prompt determination by this Court.

4. In Grossman, we reasoned that it was appropriate to accept jurisdiction in order that legislative correction could be made in the Bond Act should that be necessary. Similarly if the Water Use Act is not adequate to protect and adjudicate Indian reserved water rights, held by Indian tribes pursuant to treaties or executive order, then it is important to reach that determination at an early date in order to allow the legislature an opportunity to correct the Act.

In considering these factors, a brief review of the history of water rights litigation in Montana is appropriate. Montana's Water Use Act was enacted in 1973; however, state-wide adjudicatory proceedings did not commence until after the Act was amended in 1979. Prior to that time, the Northern Cheyenne Tribe had brought an action in the United States District Court in Montana in January 1975 seeking an adjudication of its rights in certain Montana streams. Shortly thereafter, the United States brought two suits in the same court, seeking a determination of the water rights on its own

behalf and of a number of Indian tribes, including the Northern Cheyenne. The Northern Cheyenne's action was consolidated with one of the Government's actions. Other concerned tribes intervened. Each of the federal actions was a general adjudication which sought to determine the rights inter sese of all users of the streams at issue.

While this activity was taking place in the federal forum, the State of Montana was proceeding under the Water Use Act, as originally enacted. In July 1975, the Montana Department of Natural Resources and Conservation filed petitions in state court commencing comprehensive proceedings to adjudicate water rights in the same streams at issue in the federal cases.

The federal actions were stayed in Montana pending the United States Supreme Court's decision in Colorado River Conservation District v. United States (1976), 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. That case held that (1) the McCarran Amendment (43 U.S.C. § 666), which waived the sovereign immunity of the United States as to comprehensive state water rights adjudications, provides state courts with jurisdiction to adjudicate Indian water rights held in trust by the United States, and (2) in light of the clear federal policies underlying the McCarran Amendment, a water rights suit brought by the United States in federal court was properly dismissed in favor of a concurrent comprehensive adjudication reaching the same issues in Colorado state court. When the Colorado River decision came down, the State of Montana filed a motion to dismiss the federal suits. Although the motion was argued in 1976, it was not decided until 1979.

In April 1979, the United States filed four more suits in federal court seeking to adjudicate its rights and the

9

rights of various Indian tribes in other Montana streams. In November 1979, federal Judges Battin and Hatfield consolidated the cases pending before various divisions of the United States District Court and dismissed each of the federal actions. Northern Cheyenne Tribe v. Tongue River Water Users (D.C. Mont. 1979), 484 F.Supp. 31.

In the meantime, the Montana Supreme Court extended the deadline for filing claims of existing water rights under the Water Use Act from January 1, 1982, to April 30, 1982. See, In re Water Rights Order (1979), 36 St.Rep. 1228; Supreme Court Order 14833 (Dec. 7, 1981). The legislature had created the Montana Reserved Water Rights Compact Commission by that time as well. Section 2-15-212, MCA (1979).

On appeal, the Ninth Circuit Court of Appeals reversed the district courts' dismissal of the federal cases. Northern Cheyenne Tribe v. Adsit (9th Cir. 1982), 668 F.2d 1080. The Court of Appeals held that (1) When a state has chosen to disclaim subject matter jurisdiction over Indian lands, as Montana did in Art. I, Mont. Const. 1972, state court jurisdiction to adjudicate Indian water rights is lacking absent a valid repeal of the disclaimer; and (2) the United States Supreme Court's decision in Colorado River, 424 U.S. 800, was not applicable to the Montana litigation because of Colorado River's "limited factual circumstance," the infancy of both federal and state proceedings in Montana, the possible inadequacy of the state proceedings, and the fact that the Indians might not be adequately represented by the United States in state court in light of conflicts of interest between the Federal Government's responsibilities as trustee and its own claims to water.

In turn, that decision was appealed to the United States Supreme Court, which reversed the Ninth Circuit Court of

Appeals. Arizona v. San Carlos Appache Tribe (1983), ____

U.S. ____, 103 S.Ct. 3201, 77 L.Ed.2d 837. The United States

Supreme Court stated:

> "[T]o the extent that a claimed bar to state juris-
> diction in these cases is premised on the respec-
> tive state Constitutions, that is a question of
> state law over which the state courts have binding
> authority. Because in each of these cases, the
> state courts have taken jurisdiction over the
> Indian water rights at issue here, we must assume,
> until informed otherwise, that at least insofar as
> state law is concerned such jurisdiction exists."
> San Carlos, 77 L.Ed.2d at 852.

> "[I]f the state proceedings have jurisdiction over
> the Indian water rights at issue here, as appears
> to be the case, then concurrent federal proceedings
> are likely to be duplicative and wasteful, generat-
> ing 'additional litigation through permitting
> inconsistent dispositions of property' Colorado
> River, 424 U.S. at 819. Moreover, since a judgment
> by either court will ordinarily be res judicata in
> the other, the existence of such concurrent pro-
> ceedings creates the serious potential for spawning
> an unseemly and destructive race to see which forum
> can resolve the same issues first - a race contrary
> to the entire spirit of the McCarran Amendment and
> prejudicial, to say the least, to the possibility
> of reasoned decision making by either forum. . . ."
> 77 L.Ed.2d at 856.

> ". . . In the cases before us, assuming that the
> state adjudications are adequate to quantify the
> rights at issue in the federal suits, and taking
> into account the McCarran Amendment policies we
> have just discussed, the expertise and administra-
> tive machinery available to the state courts, the
> infancy of the federal suits, the general judicial
> bias against piecemeal litigation, and the conve-
> nience to the parties, we must conclude that the
> District Courts were correct in deferring to the
> state proceedings. . . ." 77 L.Ed.2d at 858.

Addressing the propriety of deciding Indian reserved water

rights in a state court proceeding, the United States Supreme

Court stated:

> "We also emphasize, as we did in Colorado River,
> that our decision in no way changes the substantive
> law by which Indian rights in state water adjudica-
> tions must be judged. State courts, as much as
> federal courts, have a solemn obligation to follow
> federal law. Moreover, any state court decision
> alleged to abridge Indian water rights protected by
> federal law can expect to receive, if brought for
> review before this Court, a particularized and
> exacting scrutiny commensurate with the powerful
> federal interest in safeguarding those rights from
> state encroachment." 77 L.Ed.2d at 859.

On remand, the Ninth Circuit Court ultimately stayed all proceedings in the federal actions in Montana pending the outcome of state court proceedings. Northern Cheyenne Tribe v. Adsit (9th Cir. 1983), 721 F.2d 1187. The Court reserved two questions for state court determination: (1) the question of jurisdiction under state law, and (2) the question of the adequacy of the particular state proceeding to adjudicate the reserved water rights. Adsit, 721 F.2d at 1188. These were the same two questions which the Supreme Court left open for consideration on remand in San Carlos, 77 L.Ed.2d at 858, n. 20.

The Attorney General states in his Memorandum Supporting the Application for Supervisory Control that the "Supreme Court's decision in San Carlos was the culmination of a nine-year battle by Montana authorities to secure a state court forum for litigation of the critical water law issues which face the people of this state." If a state constitutional impediment exists or the Water Use Act is not adequate to adjudicate those rights which were reserved by treaty and federal law, then it would be a waste of time and expense for water claimants and the court system to allow state proceedings to culminate in appealable final decrees over the next several years before this Court considers the fundamental questions set forth in the State's petition. In the interest of protecting the water rights of all claimants, including Indian reserved water right claimants, it is essential that, upon expiration of the Reserved Water Rights Compact Commission's negotiation deadline, statewide proceedings go forward without unreasonable delay. These factors clearly indicate the type of an urgency or emergency which requires that this Court take jurisdiction.

12

In <u>Montana Power</u>, 41 St.Rep. 1601, we considered similar issues in reaching a conclusion that supervisory control would be accepted. There we emphasized that a factor to be considered is the statewide importance of the decision with its profound and far-reaching effects. In a similar manner, we conclude that the prompt determination of these fundamental questions with regard to Montana's water adjudication proceedings have profound and far-reaching effects on all of the water rights in the state of Montana. As in <u>Montana Power</u>, we conclude that the resolution of the issues in this cause will have a profound effect on the people of the State of Montana, that delay will result in irreparable harm, and that assumption of original jurisdiction now will promote judicial economy.

Based on all of these factors, we conclude that our taking jurisdiction is appropriate and in the best interests of all water right claimants within the State of Montana.

### III.

Several of the Indian tribes have argued that the Attorney General and the Water Court are not adverse parties and that as a result a live controversy does not exist. We recognize the need for a realignment of parties so that opposing views on the substantive issues may be properly presented. We also recognize that under <u>San Carlos</u>, 77 L.Ed.2d at 856, n. 17, we could have granted the tribes leave to intervene as parties in this proceeding; however, because of the exigency of time in this original proceeding, we have concluded that it is not advisable to follow that route. While we are naming the tribes as respondents, we also grant them an opportunity to request dismissal.

We now designate the parties as follows:
STATE OF MONTANA, ex rel.

MIKE GREELEY, Attorney General,
WATER COURT OF THE STATE OF
MONTANA and THE JUDGES OF THAT
COURT,
        Petitioners,

                v.

THE UNITED STATES OF AMERICA,
Individually and as Trustee for
each of the hereinafter named Indian
Tribes, and THE BLACKFEET NATION, THE CROW
TRIBE, THE CONFEDERATED SALISH AND
KOOTENAI TRIBES OF THE FLATHEAD RESERVATION,
THE GROS VENTRE AND ASSINIBOINE TRIBES OF
THE FORT BELKNAP AND FORT PECK RESERVATIONS,
THE NORTHERN CHEYENNE OF THE NORTHERN CHEYENNE
INDIAN RESERVATION, and THE CHIPPEWA-CREE
INDIANS OF THE ROCKY BOY'S RESERVATION,  and
the TURTLE MOUNTAIN CHIPPEWA TRIBE, a North
Dakota Tribe with allotments to land in the
State of Montana,
        Respondents.

                        IV.

Following are the issues which we desire that the parties brief and argue in this proceeding:

1.  Is the Water Court of Montana prohibited from exercising jurisdiction over Indian reserved water rights based on Article I of the 1972 Montana Constitution or otherwise?

2.  Is the Montana Water Use Act, Title 85, Chapter 2, MCA, adequate to adjudicate Indian reserved water rights?

3.  Is the Water Use Act, Title 85, Chapter 2, MCA, adequate to adjudicate federal reserved water rights held, on its own behalf, by the United States or any of its agencies?

                        V.

In view of the absence of any lower court record containing proof and contentions of the parties and in view of the limited time allowed for briefing, we set forth some of the contentions which have been made with regard to the Water Use Act.  In doing so, we are not in any way expressing an opinion on the merits of these contentions.  In addition, we are not in any way limiting the contentions which may be made by any party.

14

### (1) Beneficial Use

State law defines beneficial use, specifies that a statement of the purpose of the use shall be included in each claim, and requires each final decree to state the purpose for which the water included in the right is used. Sections 85-2-102(2), 85-2-224(1)(e) and 85-2-234(4)(d), MCA. Section 85-2-404, MCA provides that an appropriation right may be abandoned based in part upon non-use.

Federal cases indicate that a present consumptive use is not required to maintain an Indian reserved water right. Under the Winters Doctrine (Winters v. United States (1908), 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340), the United States Supreme Court has repeatedly concluded that water may be reserved by implication, where "water is necessary to fulfill the very purposes for which a federal reservation was created." United State v. New Mexico (1978), 438 U.S. 696, 702, 98 S.Ct. 3012, 3014, 57 L.Ed.2d 1052. United States v. Adair (9th Cir. 1984), 723 F.2d 1394, 1416, states that the full measure of such a reserved right need not be exercised immediately. Arizona v. California (1963), 373 U.S. 546, 600, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542, in substance held that the water right reserved in connection with that Indian reservation was sufficient water to "irrigate all the practicably irrigable acreage on the reservation."

The contention has been made that the Water Use Act does not sufficiently describe these differences in water rights reserved for a federal or tribal purpose and Montana appropriation rights for a beneficial use.

### (2) Diversion

The Water Use Act requires that the place and means of diversion be specified in the final decree. Section 85-2-234(4)(g), MCA.

15

Diversion of water is not required in order to have a valid Indian reserved water right. The Ninth Circuit Court has held that the right to water reserved by treaty to further a tribe's hunting and fishing purposes is basically non-consumptive and does not entitle the tribe to divert water from the natural course of the stream for other purposes. "[T]he entitlement consists of the right to prevent other appropriators from depleting the stream's waters below a protected level in any area where the non-consumptive rights apply." Adair, 723 F.2d at 1411. See also Washington v. Fishing Vessel Ass'n (1979), 443 U.S. 658, 686, 99 S.Ct. 3055, 3074-75, 61 L.Ed.2d 823 ("moderate living" standard applied to treaty fishing rights).

The contention is made that the Water Use Act does not adequately address these differences in appropriative and reserved rights.

(3) Quantification

Final decrees under the Water Use Act shall state the amount of water, rate and volume included in each existing right. Section 85-2-234(4)(b), MCA. Under state law, the quantity of water is dependent upon the beneficial use for which it is claimed. Section 85-2-224(1)(c), MCA.

In contrast under the Winters Doctrine and federal case law, the measure of the amount of water reserved to the Indian people is dependent upon the purposes for which the reservation was created.

The contention is made that the Act does not sufficiently address these differences in the method of quantification.

(4) Priority Date

The Water Use Act requires a statement of the date of priority of the claimed water right. Section 85-2-234(4)(c), MCA. The priority date is based upon "the approximate dates

16

of first putting water to beneficial use for the various amounts and times" of claimed use. Section 85-2-224(1)(c) & (f), MCA.

As previously noted, under the Winters Doctrine, an Indian reserved water right generally has a priority date as of the date on which the reservation was created. That date may not in any way relate to the date the water was first put to beneficial use. In addition, Adair in substance holds that an aboriginal right is not created by treaty, but the continued existence of such a right may be confirmed by treaty. Aboriginal water rights are stated to carry a priority date of time immemorial. Adair, 723 F.2d at 1414.

The contention is made that the Act does not sufficiently address these differences in the method of determining priority dates.

(5) Exclusive Method

The Water Use Act provides a system which is designated as the exclusive method for the appropriation of water after July 1, 1973. Section 85-2-301, MCA.

A question has been raised as to the manner in which Indian claims for reserved water rights, which have not been resolved by compact, should be treated in view of the provision that Indian claims "shall be given treatment similar to that given to all other filings." Section 85-2-803(3), MCA.

VI.

In responding to these issues, none of the parties to this proceeding waive any factually-based challenge to jurisdiction or to the adequacy of a determination of rights by the water courts. Parties may choose to appeal the actual quantification and adjudication of water rights by the Water Court. This Court's determination in the present proceeding

17

will not constitute a ruling on any factual issue in such an appeal.

In addition, this Court recognizes the contention of several of the tribes that the United States, as trustee acting in their behalf, cannot fulfil its fiduciary obligation to protect Indian reserved water rights in Montana because of the Government's conflict of interest in asserting other federal water rights, which conflict with and may contradict the rights claimed by the Indian tribes. In recognition of that contention, this Court has specifically named the various Indian tribes as parties. This should dispose of the question of inadequate representation by giving the opportunity to the individual Indian tribes to present their own points of view to this Court. In addition, we will consider any contention presented to this Court with regard to adequate representation of the tribes by the United States, acting as trustee on their behalf.

This Court also recognizes that some or all of the tribes may contend that they should not be named as parties to this lawsuit based on their sovereign immunity. Should any tribe prefer dismissal on those grounds rather than appearing before this Court, a motion for dismissal should be made to this Court.

## VII.

This is the schedule to be followed in this proceeding:

1. Within thirty days of the date of this opinion, all petitioners shall prepare, file and serve briefs on each of the named respondents.

2. Within sixty days of the date of this opinion all respondents desiring to do so shall prepare, file and serve their answering briefs on each of the named petitioners.

18

3. Within seventy-five days of the date of this opinion, the petitioners will prepare, file and serve their reply briefs.

4. This Court will set the matter for oral argument by a separate order.

## VIII.

In taking jurisdiction of this petition, this Court does not desire to adversely affect negotiations between the Indian tribes and the Water Rights Compact Commission. Nothing in this Opinion shall be construed to affect or supersede the suspension of proceedings contained in § 85-2-217, MCA, relating to reserved Indian water rights and federal reserved water rights during the negotiation period provided therein or during any legislative extension of such period.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

19

Mr. Justice John C. Sheehy, specially concurring:

I concur in the acceptance of jurisdiction herein for all of the reasons expressed by Justice Weber.

In addition, I would hold now that under Colorado River Conservation District, supra, the Water Court of our state has jurisdiction irrespective of the provisions of our state constitution. I am also now of the opinion that our present Water Use Act is inadequate to adjudicate reserved Indian water rights, whether by treaty or aboriginal origination, for the reasons stated in the majority opinion. I also feel that the appropriation doctrine may be inadequate to adjudicate other federal reserved rights.

I am expressing my opinions early to flag the legislature that if it desires to have an effective adjudicatory process to determine finally water rights in Montana, it must take action in this legislative session of 1985 to make curative amendments to the Water Use Act. Failure to act in this session would, in my opinion, mean a loss of jurisdiction to the State Water Court for such period of time as the legislature took it upon itself to act. No more important project faces the legislature or this state.

John C. Sheehy
_____
Justice

Mr. Chief Justice Frank I. Haswell, dissenting:

I dissent from this Court's acceptance of original jurisdiction via extraordinary writ at this time. I consider this action premature until such time as Compact negotiations are concluded.

While the Court's intervention at this time may not violate the letter of the law, it violates the spirit of Montana's public policy to make "an effort to conclude compacts for the equitable division and apportionment of waters between the state and its people and the several Indian tribes claiming reserved water rights within the state" (§ 85-2-701, MCA) and the federal government claiming non-Indian reserved water rights within this state (§ 85-2-703, MCA). The litigation spawned by the majority opinion is inimical to successful compact negotiations despite protestations to the contrary by the majority. The inherent coercive effect of contemporaneous litigation on the negotiating posture of the parties in Compact negotiations cannot be ignored.

_____
Chief Justice


Mr. Justice L. C. Gulbrandson:

I concur in the foregoing dissent of Mr. Chief Justice Haswell.

_____
Justice

-21-

Mr. Justice Frank B. Morrison, Jr., dissenting.

I respectfully dissent for the reason that, in my opinion, this Court does not have jurisdiction.

Section 85-2-217, MCA, suspends "all proceedings to generally adjudicate reserved Indian water rights and federal reserved water rights of those tribes and federal agencies which are negotiating. . ." This statute, if applicable, suspends proceedings until July 1, 1985. The majority assumes jurisdiction here by holding that the provisions of this statute do not apply to this "supervisory control" proceeding. I disagree.

The majority opinion of this Court joins the United States as a party defendant. This is done pursuant to the McCarran Amendment, 43 U.S.C. § 666. That Amendment provides:

"(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water . . ."

The only way in personam jurisdiction could have been acquired over the United States is pursuant to the above provision of the McCarran Amendment. By asserting jurisdiction over the United States, the majority has conceded that this is a proceeding to adjudicate the rights to the use of water. In so doing, this Court has specifically violated the provisions of § 85-2-217, MCA.

Furthermore, this is a supervisory control action, not a declaratory judgment action. In asserting supervisory control over the water court, we become part of that proceeding, a proceeding to adjudicate water rights.

In 1981, § 85-2-217, MCA, was amended to substitute the word "proceedings" for the word "actions." This further shows an intent on the part of the legislature to broaden the suspension provisions of the statute. "The word 'proceeding'

22

applies to any step to be taken in a cause which is authorized by law in order to enforce the rights of the parties or effectuate the proper conduct of it while pending in court." State ex rel. Bruce v. District Court of the Second Judicial District (1905), 33 Mont. 359, 362, 83 P. 641, 642. The amendment to the statute clearly embraces this petition for supervisory control.

In addition to the foregoing, I concur with the comments made by the Chief Justice in his dissent.

_____
Justice