No. 86-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

BUTTE-SILVER BOW LOCAL GOVERNMENT,

        Petitioner,

   -vs-

THE STATE OF MONTANA; TREASURER OF
THE STATE OF MONTANA, DEPARTMENT OF
REVENUE OF THE STATE OF MONTANA,

        Respondents.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Petitioner:

        James H. Goetz argued; Goetz, Madden & Dunn, Bozeman,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Clay R. Smith argued, Asst. Atty. General, Helena
        Eric J. Fehlig, Dept. of Revenue, Helena, Montana
        Donald  MacIntyre, Dept. of Natural Resources, Helena,
        Montana

Submitted: December 2, 1988

Decided: January 19, 1989

Filed:

ED SMITH

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This case involves a petition for assumption of original jurisdiction filed pursuant to Rule 17, M.R.App.P. Petitioners seek a declaratory judgment declaring the Montana Resource Indemnity Trust Act (1973), (the Act), unconstitutional, insofar as it authorizes the expenditure of Resource Indemnity Trust (Trust) funds for purposes other than the reclamation of lands disturbed by the taking of natural resources. Petitioners also challenge the constitutionality of respondents' acts in appropriating and expending Trust funds for purposes other than reclamation of lands and contend such acts are a breach of respondents' fiduciary duties as trustees of the Trust under § 15-38-203(2), MCA. We accept the case on original jurisdiction, but find the Act is constitutional and that respondents' expenditures of Trust funds were authorized under the Act.

The Butte-Silver Bow Local Government (Butte-Silver Bow) filed its "Petition for Declaratory Judgment on Original Jurisdiction" with the Montana Supreme Court on June 13, 1986. The petition relies on Art. IX, sec. 2 as the constitutional basis for its claim. On July 30, 1986, petitioners Butte-Silver Bow sought leave to amend its petition to include several individuals who would "suffer serious adverse impacts in their environmental and aesthetic well-being and quality of life if proper reclamation is not undertaken in the City of Butte." Robert J. Pavlovich, Fritz Daily, and Don R. Peoples were added "in their individual capacities as citizens, residents, electors, and taxpayers of Butte-Silver Bow Local Government."

After review of the briefs submitted, this Court remanded the action to Montana's First Judicial District Court, Lewis and Clark County, for determination of factual issues. Particularly, this Court requested the District Court to prepare findings of fact "as to the use and expenditures made of monies derived from the Resource Indemnity Trust Fund, through its interest earnings by the various governmental agencies under the appropriations of the Legislature." The case is back before this Court upon the agreed findings of fact of the parties adopted by the District Court.

Petitioners raise the following issues to this Court:

1. Do the petitioners have standing and should this Court assume original jurisdiction?

2. Is the Montana Resource Indemnity Trust Act, § 15-38-101, et seq., MCA, unconstitutional for authorizing the appropriation and expenditure of Trust funds for purposes other than reclamation of lands?

3. Have respondents violated their fiduciary duties as trustees by using Trust funds for purposes other than the reclamation of lands?

4. Have respondents used Trust funds for general agency operating expenses in violation of § 15-38-203(2), MCA?

5. Are petitioners entitled to attorney's fees under the common fund theory?

I.

Should original jurisdiction be granted?

Petitioners' standing to bring this action is essential to the question of our acceptance of original jurisdiction. This Court has previously held a registered voter has standing where a constitutional provision is clearly intended to benefit the public and the electorate, and by contending

3

the provision "has been the victim of legislative strangulation." Committee for an Effective Judiciary v. State (1984), 209 Mont. 105, 108, 679 P.2d 1223, 1225. Further, a taxpayer will have standing to question the validity of a tax, or the expenditure of the tax monies, provided the issue(s) presented directly affect the constitutional validity to collect or use the proceeds of the tax by the state or a local government entity. Grossman v. State, Dept. Natural Resources (1984), 209 Mont. 427, 438-439, 682 P.2d 1319, 1325. Individual petitioners meet the criteria necessary to establish standing both as registered voters and as affected taxpayers. Having found the individual petitioners have standing, we decline to address the question of petitioner Butte-Silver Bow's standing.

Once standing to bring the action is established, the question shifts to whether the action meets the necessary factors for this Court to accept original jurisdiction. This Court has found that an assumption of original jurisdiction is proper when: (1) constitutional issues of major state wide importance are involved; (2) the case involves pure legal questions of statutory and constitutional construction; and (3) urgency and emergency factors exist making the normal appeal process inadequate. State ex rel. Greely v. Water Court, State of Montana (1984), 214 Mont. 143, 691 P.2d 833; Rule 12, M.R.App.P. Moreover, this Court clearly stated the Court has original jurisdiction to accept declaratory judgment proceedings "where the issues have impact of major importance on a statewide basis, or upon a major segment of the state, and where the purpose of the declaratory judgment proceedings will serve the office of a writ provided by law . . ." Grossman v. State, Dept. of Natural Resources (1984), 209 Mont. 427, 436, 682 P.2d 1319, 1324.

4

This petition involves a constitutional issue of major statewide importance. Petitioners are seeking an interpretation by this Court of a section of the Constitution, of a major act passed by the Legislature and a determination of the existence or absence of conflicts between the two. A decision in the petitioners' favor clearly would have a major impact on the Legislature's funding of a variety of state programs.

Additionally, this petition involves only legal questions. All factual questions involving the disposition of Trust monies, have been adequately addressed in the District Court's findings of fact. The Court must determine the legal question of the purposes for which trust funds may or may not be utilized, and then may examine whether the appropriations made by the Legislature were authorized.

Regarding the question of whether or not this case presents sufficient urgency and emergency factors to require the Court to exercise original jurisdiction, this Court has stated:

> Resolution of the issues presented herein is necessary to eliminate or reduce a multiplicity of future litigation; . . . and to eliminate needless expenditure of public funds on procedures that otherwise might subsequently be declared illegal. One of the basic purposes of the Montana Declaratory Judgment Act is to provide for advance determination of such issues, thereby eliminating these otherwise detrimental results.

Grossman, 682 P.2d at 1322, citing Forty-Second Legislative Assembly v. Lennon (1971), 156 Mont. 416, 420-422, 481 P.2d 330, 332-333. In light of the fact that the Legislature convened on January 2, 1989, and it will undoubtedly fund programs from the trust income which may or may not be

determined constitutional by this opinion, sufficient urgency and emergency exists for exercising original jurisdiction.

Having found that petitioners have standing and that the petition satisfies the three required factors, we assume original jurisdiction.

## II.

Petitioners' advance three arguments on the issue of whether or not the Montana Resource Indemnity Trust Act of 1973 violates Art. IX, sec. 2 of the 1972 Montana Constitution. First, petitioners allege that the plain language of Art. IX, sec. 2, provides the Trust fund shall only be used for the reclamation of lands disturbed by the taking of natural resources. Second, by placing the amendments authorizing the Trust in Art. IX, sec. 2, the people of the state of Montana have shown their intent that use of the Trust funds be limited to reclamation of such disturbed lands. Third, the Legislative history shows an intent to limit Art. IX, sec. 2, to reclamation of lands disturbed by the removal of natural resources.

When interpreting a constitutional provision, certain tenets must be observed. The same rules of construction which apply to determining the meaning of statutory provisions apply to constitutional provisions. Keller v. Smith (1976), 170 Mont. 399, 404, 553 P.2d 1002, 1006. The intent of the framers of the provision is controlling. Keller, 553 P.2d at 1006. However,

> [S]uch intent shall first be determined from the plain meaning of the words used, if possible, and if the intent can be so determined, the courts may go no further and apply any other means of interpretation. (Citations omitted.)

6

Keller, 553 P.2d at 1006. We therefore must decide whether the plain language of Art. IX, sec. 2 clearly provides the trust fund shall only be used for the reclamation of lands disturbed by the taking of natural resources, or whether the provision is ambiguous and in need of additional interpretation. If the State Constitution does not provide an express limitation on the legislative appropriation power of the State, that power shall reside in the Legislature. Board of Regents of Higher Education v. Judge (1975), 168 Mont. 433, 446, 543 P.2d 1323, 1331.

The plain language of Art. IX, sec. 2(1), which is the reclamation section within the larger Environment and Natural Resources Article, states:

> All lands disturbed by the taking of natural resources shall be reclaimed. The legislature shall provide effective requirements and standards for the reclamation of lands disturbed.

Subsection (1) is a statement by the framers of the Constitution that "[a]ll lands disturbed by the taking of natural resources shall be reclaimed" and that the Legislature is directed to provide regulations and standards for that reclamation. This subsection does not mention the Trust or place any limitation upon use of Trust funds.

Additional subsections were added to sec. 2 by Constitutional amendment in 1974 (following the 1973 legislative enactment of the Montana Resources Indemnity Trust Act). Subsections (2) and (3) were passed to assure the constitutional protection of this Trust and to preserve the Trust for its intended purpose. They state:

> (2) The legislature shall provide for a fund, to be known as the resource indemnity trust of the state of Montana, to be funded by such taxes on the extraction of natural resources as the

legislature may from time to time impose for that purpose.

(3) The principal of the resource indemnity trust shall forever remain inviolate in an amount of one hundred million dollars ($100,000,000), guaranteed by the state against loss or diversion.

We do not find a limitation in subsection (2) which would restrict the use of Trust funds to reclamation of lands. The subsection creates the Trust, titles the Trust and provides a source of funding for the Trust. We note that the Trust is not titled the Reclamation of Lands Indemnity Trust nor the Mining Lands Indemnity Trust, but the Resource Indemnity Trust. As words must be given their natural and popular meaning in applying statutory construction, we note that Websters 3rd New International Dictionary defines resource as "a new or a reserve source of supply or support: a fresh or additional stock or store available at need: something in reserve or ready if needed." This definition is very broad and indicates an intent on the part of the framers of the provision to have the Trust indemnify the people of the state for the taking or using of any resource.

Examining subsection (3), we find a limitation upon the use of the Trust in clear and unambiguous words. However, this limitation merely protects the principal of the Trust from future invasion by the Legislature. This provision may not be construed as a limitation on the use of Trust income, nor of the use of Trust principal over and above the $100,000,000 protected by subsection (3).

Appellants claim that the inclusion of subsections (2) and (3) in sec. 2 shows an intent to use the Trust strictly for the purpose of reclamation of lands disturbed by the taking of natural resources as provided in subsection (1).

8

They contend the use of the words "for that purpose" in subsection (2) refers back to subsection (1) and the purpose stated therein of reclamation of lands disturbed. Respondents correctly point out that petitioners' argument ignores a basic rule of grammatical construction: "[t]he ordinary rule of construction is that the exception is confined to the last antecedent." (Emphasis added.) State ex rel. Hinz v. Moody (1924), 71 Mont. 473, 484, 230 P. 575, 579. The last antecedent phrase in subsection (2) is the funding of the Trust, not the reclamation of disturbed lands found in subsection (1).

Further, the Constitution as a whole does not support a finding of a Trust fund limitation in Art. IX, sec. 2 of the 1972 Montana Constitution. At no other place in the Constitution is a limitation placed upon the appropriation of the funds of this Trust. Where a limitation on certain, specific revenues is intended in other sections in the Constitution, that limitation is clearly spelled out. See, e.g., Art. IX, sec. 5 (relating to the coal severance tax trust fund); and Art. VIII, sec. 6 (relating to the non-diversion of highway revenues).

For the foregoing reasons we hold the plain language of Art. IX, sec. 2 does not place a limitation upon the appropriation of resource indemnity trust funds beyond the restriction contained in subsection (3). Having so determined we may not apply other means of statutory construction. Keller, 553 P.2d at 1006.


III.

As Art. IX, sec. 2 of the 1972 Montana Constitution does not restrict appropriation of Trust funds beyond the limitation contained in subsection (3), we now turn to petitioners' third and fourth issues.

Petitioners first argue that respondents, as trustees of the Trust, have violated their fiduciary duties as trustees by allocating Trust funds for projects unrelated to the reclamation of lands disturbed by the taking of natural resources. We held that the plain language of the 1972 Montana Constitution does not so limit the appropriation or allocation of Trust funds, and we need only discuss whether the Montana Resource Indemnity Trust Act, Title 15, Chapter 38, contains such a limitation on the use of funds.

Our examination of the Act finds the appropriation or allocation of Trust funds is not limited to the reclamation of lands disturbed by the taking of natural resources. Rather, the Legislature has provided the funds "shall be used and expended to improve the total environment and rectify damage thereto." Section 15-38-203(1), MCA. "Total environment" has been defined as "air, water, soil, flora and fauna and the social, economic, and cultural conditions that influence communities and individual citizens." Section 15-38-103(4), MCA. It is indisputable this purpose is very broad and allows the Legislature great discretion in determining the uses to which to apply Trust funds. The Act only limits appropriations to programs or uses which improve the total environment and rectify damage thereto, as total environment is defined in § 15-38-103(4), MCA. We find no express limitation contained within the Act which would limit appropriation or allocation of Trust funds solely for reclamation of lands disturbed by the taking of natural resources.

Petitioners also contend past and present expenditures have been made of Trust funds for general operating expenses of state agencies in violation of the express limitations in § 15-38-203(2), MCA, and in breach of their fiduciary duties as trustees of the Trust. Section 15-38-203(2), MCA, states:

10

> It is the intent of the legislature that future appropriations from the resource indemnity trust interest account not be made to fund general operating expenses of state agencies.

Initially we note that this subsection, added by the 1985 Legislature, specifically applies to "future appropriations." For that reason we find there could not have been a breach of fiduciary duty prior to the effective date of the statute. Further, the Legislature generally cannot pass legislation which a future Legislature may not repeal. State v. State Highway Commission (1931), 89 Mont. 205, 215, 296 P. 1033, 1036.

Upon examination of the specific violations alleged by petitioners, we find a problem of semantics. Petitioners identify appropriations made to the Department of State Lands, (DSL) the Department of Livestock, and the Department of Natural Resources in the 1987 biennium, as having been made for general operating expenses. We find it ironic that one of the expenditures, alleged as having been for "general operations," was for the reclamation division of the DSL in 1986. The funding for the reclamation division was provided in total by Trust funds and federal funds allocated for similar use. The division is responsible for regulating mining related disturbances in the state and enforcing the following acts: the Metal Mine Reclamation Act, the Open Cut Mining Act, the Montana Strip and Underground Mine Reclamation Act, and the Underground Mine Siting Act. The activities conducted by the division are admittedly administrative in nature, but are essential to ensuring that the total environment of the state is improved and damage thereto is rectified. The argument that Trust funds allocated toward operation of these programs is in violation of § 15-38-203(2), MCA, is without merit. In each case, the

11

State has shown the funds were expended for the operation of programs related to improving the total environment or rectifying damage thereto.

The allocation of Trust funds for these programs did not constitute an expenditure for general operating expenses of state agencies in violation of § 15-38-203(2), MCA. Consequently, we hold the use of funds for programs related to improving the total environment does not violate respondents' fiduciary duty toward the Trust in allocating Trust funds. Having found petitioners are not entitled to relief, petitioners' claim for attorney's fees must be, and hereby is denied.

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Justice

12

Mr. Justice John C. Sheehy, dissenting:


This decision continues what has become a commonplace in the history of the state of Montana: the State gets the gold mine, Butte gets the shaft.

The decision is about as farfetched a stretch of interpretation of a constitutional provision as can be imagined. The State Constitution requires that lands disturbed by the taking of natural resources shall be reclaimed. The Constitution further provides for a special fund to be created based solely on the extraction of natural resources. Somehow, semantically, the majority find no nexus between the two provisions, all contained in the same constitutional article.

The close tailoring of the tax on the extraction of natural resources to the constitutional mandate that all lands disturbed by the taking of natural resources be reclaimed is ignored. Somehow the obvious connection between the tax and the purpose of the tax escapes the facile interpretation of the majority.

In their response to the petition, the state of Montana and its Treasurer admitted that the 1985 legislature "utilized a portion of the interest income from the Resource Indemnity Trust fund to fund general operating expenses of state agencies." (Paragraph 11, response to amended petition.) Yet the majority see nothing inconsistent in permitting the State to fund its general operating expenses from a fund constitutionally entitled "Resource Indemnity Trust." A trust by any other name remains a trust, and a breach of trust by the State should no more be countenanced by this Court than by any private trustee.

The Resource Indemnity Trust was never intended to fund the general operations of the State. Other taxes levied upon extractors of natural resources amply provide for the general expenses of state government. The coal severance tax (Section 15-35-103, MCA) is partly credited to the general fund of the State. (Section 15-35-108(3)(k), MCA.) The oil and gas severance tax (Section 15-36-101, MCA) is allocated to county expenses and then to the general fund. Section 15-36-112, MCA. The mining license taxes levied on metalliferous mines (Section 15-37-103, MCA) goes partly to the credit of the general fund of the State. Section 15-37-117, MCA. The taxes on micaceous mineral mines all go to the general fund of the State. Section 15-37-207, MCA. The Resource Indemnity Trust Tax, as a special tax levied for land reclamation, cannot be justified if some of that tax is going to be siphoned off for the general operations of the State. To permit such extraneous use of the tax funds violates the legislative purpose given as the excuse for levying the tax. That legislative purpose follows:

> It is the policy of the state of Montana to indemnify its citizens for the loss of long term value resulting from the depletion of its mineral resource base and for environmental damage caused by mineral development. This policy of indemnification is achieved by establishing a permanent Resource Indemnity Trust Fund from the proceeds of a tax levied on mineral extraction and by allocating spendable trust revenues:
>
> (1) To protect and restore the environment from damages resulting from mineral development; and
>
> (2) To support a variety of development programs that benefit the economy of the State and the lives of Montana citizens.

How blatant will the extraneous use of Resource Indemnity Trust taxes become? To begin with, 30 percent of

- 14 -

the interest income of the Resource Indemnity Trust Fund must now be allocated to the water development state special revenue account. Section 15-38-202(2)(a), MCA. Out of that account, the taxes imposed on the extraction of natural resources will be used for the rehabilitation of State owned projects and parks, including the rehabilitation of spillways and State owned dams; the formulation of down stream emergency warning and evacuation plans for state-owned dams; the development of hydropower potential of state-owned dams; the promotion and development of off-stream or tributaries storage; and among others, administrative expenses, including but not limited to the salaries and expenses of personnel, equipment, office space and other necessities incurred in the administration of the water development program. Section 85-1-604(3)(b), MCA.

The preservation and proper use of water is necessary to the well-being of this dry western state, but the expense of such preservation should never be fobbed off on a tax levied solely on mines and oil and gas operations, a tax ostensibly levied for the purpose of land reclamation.

I take the position that since land reclamation is constitutionally demanded, and since the Constitution provides a method through the Resource Indemnity Trust Fund to pay for such reclamation, that monies raised from taxes on parties who extract the natural resources should be limited to the purposes of the tax. The legislature, by resorting to special tax funds to provide for general fund obligations is creating an unequal and unfair burden on these special taxpayers and we should not countenance it.

_John L. Sheehy_
Justice

I concur in the foregoing dissent of Justice Sheehy.

_William E. Hunt_
Justice

- 15 -