FILED

July 15 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 07-0745

2008 MT 251

_____

PEDRO HERNANDEZ, Justice of the Peace,
Department #2, Yellowstone County, Montana,

     Applicant,

  v.

BOARD OF COUNTY COMMISSIONERS,
Yellowstone County,

     Respondent,

  and

STATE OF MONTANA,

     Intervenor and Respondent.

_____

O P I N I O N

A N D

O R D E R

¶1     On December 19, 2007, Yellowstone County Justice of the Peace Pedro Hernandez ("Petitioner") filed with this Court an "Original Writ – Petition for Declaratory Judgment" wherein he challenged the constitutionality of § 3-10-101(5), MCA, providing for the creation of justice's courts of record within Montana counties. After receiving summary responses from the Yellowstone County Board of County Commissioners and the State of Montana, this Court ordered full briefing on three of Petitioner's claims and summarily dismissed Petitioner's remaining claims. The parties duly submitted their briefs in

1

accordance with our Order and, after reviewing those briefs, we deny the petition for declaratory judgment.

## Factual and Procedural Background

¶2 In 2003, the Montana Legislature passed legislation authorizing Montana counties to establish justice courts as justice's courts of record. *See* Sec. 5, Ch. 389, L. 2003 (House Bill No. 358 ("HB 358")). This legislation was designed to reduce the strain of multiple trials and to increase judicial efficiency. The sponsor of HB 358, Representative Michael Lange, testified before the House Committee on the Judiciary that creating justice's courts of record would allow counties "to streamline cases, eliminate the number of appeals, and provide speedy trials." Statement of Rep. Lange, Hearing on HB 358, House Committee on the Judiciary (January 28, 2003). HB 358 was codified at § 3-10-101(5), MCA. After some minor changes in the language of § 3-10-101(5), MCA, in 2005, this statute now provides:

> A county may establish the justice's court as a court of record. If the justice's court is established as a court of record, it must be known as a "justice's court of record" and, in addition to the provisions of this chapter, is also subject to the provisions of 3-10-115 and 3-10-116. The court's proceedings must be recorded by electronic recording or stenographic transcription and all papers filed in a proceeding must be included in the record. A justice's court of record may be established by a resolution of the county commissioners or pursuant to 7-5-131 through 7-5-137.

¶3 In accordance with § 3-10-101(5), MCA, the Yellowstone County Board of County Commissioners passed Resolution No. 07-90 on October 2, 2007, making the Yellowstone County Justice Court a court of record effective January 1, 2008. Resolution No. 07-90 provided in pertinent part:

> It is in the best interest of the public to make Justice Court a court of record. It will serve judicial economy. A defendant will be entitled to only one trial in

2

Justice Court and an appeal on the record in District Court. It will eliminate *de novo* appeals to District Court.

¶4 Petitioner filed his petition for declaratory judgment with this Court on December 19, 2007. He argued in his petition that the creation of a justice's court of record in Yellowstone County is contrary to Article VII, Section 1 of the Montana Constitution, which vests judicial power in "one supreme court, district courts, justice courts, and such other courts as may be provided by law"; Article VII, Section 2(3) of the Montana Constitution, which vests the power to make rules governing practice and procedure for all other courts in the Montana Supreme Court; and Article VII, Section 4(2) of the Montana Constitution, which provides that "[t]he district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law." Petitioner also argued that § 3-10-101(5), MCA, violates the following provisions of the Montana Constitution: Article II, Section 2 (right of self-government); Article II, Section 8 (right of participation); Article II, Section 17 (right to due process of law); Article III, Section 1 (separation of powers); Article XIV, Section 8 (amendment by legislative referendum); and Article XIV, Section 9 (amendment by initiative). In addition, Petitioner contended that he is entitled to recover his costs and attorney fees in this matter pursuant to the "private attorney general" theory and § 27-8-313, MCA.

¶5 On January 10, 2008, the State of Montana, through the Office of the Montana Attorney General, moved to intervene in this matter pursuant to M. R. App. P. 27, providing for intervention by the State in matters involving constitutional questions. The State filed a summary response to the petition on February 7, 2008. That same day, the Office of the

3

Yellowstone County Attorney, on behalf of Yellowstone County and the Yellowstone County Board of County Commissioners (collectively "Yellowstone County"), filed its summary response to the petition.

¶6 After reviewing the petition and the summary responses thereto, we concluded that full briefing was appropriate as to the following claims raised in the petition: (1) judicial power under Article VII, Section 1 of the Montana Constitution; (2) district courts' de novo jurisdiction under Article VII, Section 4(2) of the Montana Constitution; and (3) costs and attorney fees. Thus, we ordered the parties to prepare briefs addressing these issues. We urged Yellowstone County and the State to join their arguments to the extent that they agreed with each other or to file a consolidated brief. We also stated in our Order that we were not persuaded by Petitioner's arguments on his claims under the following provisions of the Montana Constitution and we declined to entertain further briefing on these claims: Article VII, Section 2(3), pertaining to Supreme Court rulemaking authority; Article III, Section 1, pertaining to separation of powers; Article II, Section 2, pertaining to the right of self government; Article II, Section 8, pertaining to the right of participation; and Article XIV, Sections 8 and 9, pertaining to amendment of the Constitution by referendum and initiative. We also determined that Petitioner did not have standing to raise a claim under the Due Process Clause of the Montana Constitution (Article II, Section 17) and we declined to entertain further briefing on this claim.

¶7 On March 24, 2008, Petitioner filed with this Court his Brief in Support of Petition for Original Writ. Yellowstone County and the State (collectively "Respondents") filed a

4

consolidated brief in response on May 21, 2008, and Petitioner filed his reply brief on May 28, 2008.

**Discussion**

¶8     As a threshold matter, we first determine whether this is an appropriate case for this Court's exercise of original jurisdiction.   In their summary responses to the petition, Respondents agreed with Petitioner that this Court should accept original jurisdiction in this case.  However, original jurisdiction cannot be bestowed by agreement.  *Montanans for Coal Trust v. State*, 2000 MT 13, ¶ 22, 298 Mont. 69, ¶ 22, 996 P.2d 856, ¶ 22.

¶9     Assumption by this Court of original jurisdiction over a declaratory judgment action is proper when:  (1) constitutional issues of major statewide importance are involved; (2) the case involves purely legal questions of statutory and constitutional construction; and (3) urgency and emergency factors exist making the normal appeal process inadequate. *Montanans for Coal Trust*, ¶ 27 (citing *Butte-Silver Bow Local Govern. v. State*, 235 Mont. 398, 401-02, 768 P.2d 327, 329 (1989); *State ex rel. Greely v. Water Court of State*, 214 Mont. 143, 691 P.2d 833 (1984)); M. R. App. P. 14(4).  All of these criteria are met here.

¶10     First, as the parties point out, the issue of whether the creation of justice's courts of record violates certain provisions of the Montana Constitution is of statewide importance. Several counties in Montana have already created justice's courts of record.  Thus, a decision on the constitutionality of § 3-10-101(5), MCA, will affect multiple counties, not just Yellowstone County.  Second, there are no disputed facts in this case.  The issues presented involve purely legal questions of statutory and constitutional construction.  Third, urgency and emergency factors exist in this case that would make the normal appeal process

5

inadequate. Before an appeal from a justice court judgment presenting this issue could reach this Court, potentially hundreds of misdemeanor criminal cases would be resolved in the justice's courts of record throughout Montana. If Petitioner's claims were ultimately sustained, any judgments of conviction would be undermined and the prosecutions likely lost due to the running of the statute of limitations in those cases. Hence, to require an action be brought in a county that has created a justice's court of record would needlessly spawn litigation and any further delay could create confusion as to the administration of justice.

¶11 Accordingly, we hold that this Court does have original jurisdiction to entertain Petitioner's "Original Writ – Petition for Declaratory Judgment." Therefore, we address the following claims raised by Petitioner: (1) whether the creation of justice's courts of record violates Article VII, Section 1 of the Montana Constitution; (2) whether the creation of justice's courts of record violates Article VII, Section 4(2) of the Montana Constitution; and (3) whether Petitioner is entitled to his costs and attorney fees for bringing this action.

*1. Article VII, Section 1 – judicial power*

¶12 Article VII, Section 1 of the Montana Constitution provides: "The judicial power of the state is vested in one supreme court, district courts, justice courts, and such other courts as may be provided by law."

¶13 Petitioner argues that § 3-10-101(5), MCA, violates Article VII, Section 1, because justice courts are a specifically-designated constitutional court and, as such, they are entitled to constitutional protection. Petitioner also argues that the Legislature may "create" additional courts, but it may not "abolish" constitutional courts.

6

¶14 Respondents argue, on the other hand, that § 3-10-101(5), MCA, does not violate Article VII, Section 1, because this constitutional provision grants the Legislature the authority to create and vest judicial power in justice's courts of record, thus Petitioner's arguments to the contrary fail.

¶15 Statutes are presumed to be constitutional, and it is the duty of this Court to avoid an unconstitutional interpretation if possible. *School Trust v. State ex rel. Bd. of Com'rs*, 1999 MT 263, ¶ 11, 296 Mont. 402, ¶ 11, 989 P.2d 800, ¶11 (citing *State v. Nye*, 283 Mont. 505, 510, 943 P.2d 96, 99 (1997)). Every possible presumption must be indulged in favor of the constitutionality of a legislative act. *Powell v. State Compensation Ins. Fund,* 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13 (citing *Davis v. Union Pacific R. Co.*, 282 Mont. 233, 240, 937 P.2d 27, 31 (1997); *State v. Safeway Stores*, 106 Mont. 182, 199, 76 P.2d 81, 84 (1938)). The party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional "beyond a reasonable doubt"[1] and, if any doubt exists, it must be resolved in favor of the statute. *Powell*, ¶ 13 (citing *Grooms v. Ponderosa Inn*, 283

---

[1] In *Oberson v. U.S. Dep. of Agric., Forest Ser.*, 2007 MT 293, ¶¶ 33-37, 339 Mont 519, ¶¶ 33-37, 171 P.3d 715, ¶¶ 33-37 (Leaphart, Nelson, Cotter, JJ., concurring), the concurring Justices criticized the use of the "beyond a reasonable doubt" standard for constitutional challenges. Although pointing out that this Court has applied this standard to constitutional challenges for over 100 years, the concurring Justices found this to be "an incongruous standard to apply to the proving of a legal proposition as opposed to an issue of fact." *Oberson*, ¶ 34. The concurring Justices also expressed their agreement with the observation of the United States District Court for the Northern District of New York that the "beyond a reasonable doubt" standard is "an 'absurd standard of decision' for a question of law." *Oberson*, ¶ 34 (quoting *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F. Supp. 678, 697-98 n. 19 (N.D.N.Y. 1989)). " 'In essence, the "beyond a reasonable doubt" standard is suited to resolving questions which involve some element of fact. A question of law is not decided by any standard of decision prescribed for a trier of fact.' " *Oberson*, ¶ 34 (quoting *Blue Sky,* 711 F. Supp. at 698 n. 19).

Mont. 459, 467, 942 P.2d 699, 703 (1997); *Heisler v. Hines Motor Co.,* 282 Mont. 270, 279, 937 P.2d 45, 50 (1997)).

¶16    As we noted above, Article VII, Section 1, provides: "The judicial power of the state is vested in one supreme court, district courts, justice courts, *and such other courts as may be provided by law*" (emphasis added).  The Convention Notes to Article VII, Section 1, following the recitation of this provision in the Montana Code Annotated, state that it "[r]evises [the] 1889 constitution by allowing the legislature to establish 'inferior' courts, such as a small claims court, as well as intermediate courts of appeal."  Thus, the compilers of the Montana Code Annotated recognized that the phrase "such other courts as may be provided by law" grants the Legislature the authority to create inferior courts.

¶17    While Petitioner concedes that the language of Article VII, Section 1, confers power on the Legislature to create "inferior" courts or "courts of limited jurisdiction," he argues that it does not permit the Legislature to "abolish," "eliminate," or "substitute" another court at the cost of elimination of justice courts.

¶18    Contrary to Petitioner's assertions, nothing in the legislation allowing the creation of justice's courts of record indicates a legislative intent to abolish existing justice courts.  The creation of justice's courts of record merely provides Montana counties with a choice of whether they want their justice court to be one of record.  Indeed, the Legislature gave counties the option of creating justices' courts of record.  *See* § 3-10-101, MCA.

¶19    Petitioner also complains that there are no rules governing procedure in justice's courts of record to advise *pro se* litigants as to the effect of proceeding without an attorney,

8

or that trial before a justice's court of record precludes a trial de novo if appealed. On the contrary, at the same time the 2003 Legislature enacted § 3-10-101(5), MCA, allowing for the creation of justice's courts of record, it also enacted § 3-10-115, MCA, setting forth the rules to be followed in justice's courts of record. This statute provides:

> **3-10-115. Appeal to district court from justice's court of record -- record on appeal.** (1) A party may appeal to district court a judgment or order from a justice's court of record. The appeal is confined to review of the record and questions of law, subject to the supreme court's rulemaking and supervisory authority.
> (2) The record on appeal to district court consists of an electronic recording or stenographic transcription of a case tried, together with all papers filed in the action.
> (3) The district court may affirm, reverse, or amend any appealed order or judgment and may direct the proper order or judgment to be entered or direct that a new trial or further proceeding be had in the court from which the appeal was taken.
> (4) Unless the supreme court establishes rules for appeal from a justice's court of record to the district court, the Montana Uniform Municipal Court Rules of Appeal to District Court, codified in Title 25, chapter 30, apply to appeals to district court from the justice's court of record.

¶20 Here, Petitioner has not proven "beyond a reasonable doubt" that § 3-10-101(5), MCA, violates Article VII, Section 1. *Powell*, ¶ 13. Accordingly, we hold that justice's courts of record do not unconstitutionally abolish justice courts. Rather, justice's courts of record are created in accordance with the meaning of Article VII, Section 1, and are, therefore, constitutional. There is nothing in Article VII, Section 1, that prohibits a constitutionally created justice court from being a justice's court of record.

*2. Article VII, Section 4(2) – district courts' de novo jurisdiction*

9

¶21 Article VII, Section 4(2) of the Montana Constitution provides in pertinent part: "The district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law."

¶22 Petitioner argues that the elimination of de novo trials following appeal from justice's courts of record violates Article VII, Section 4(2). Respondents argue, on the other hand, that the phrase "unless otherwise provided by law" in Article VII, Section 4(2), allows the Legislature to eliminate de novo appeals from inferior courts to district courts.

¶23 "In interpreting a constitutional provision, the intent of the framers of the constitutional provision controls its meaning." *Woirhaye v. Fourth Judicial Dist. Court*, 1998 MT 320, ¶ 15, 292 Mont. 185, ¶ 15, 972 P.2d 800, ¶ 15 (citing *Keller v. Smith*, 170 Mont. 399, 405, 553 P.2d 1002, 1006 (1976)).

¶24 Here, the phrase "unless otherwise provided by law" gives the Legislature the ability to provide for something other than de novo appeals in district courts. The Delegates to the 1972 Montana Constitutional Convention debated whether or not to include this language in Article VII, Section 4(2), and specifically contemplated that the Legislature could decide to eliminate trials de novo. The initial language of Article VII, Section 4(2), ended with the word "anew" until Delegate Jerome Loendorf proposed adding the phrase "unless otherwise provided by law." Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1075. In support of his amendment, Delegate Loendorf argued that

> [p]rocedures can be provided in the future by which you could have appeals other than trial de novo from a Small Claims Court or any other inferior court to a District Court. This is not a limiting factor. It's something that allows for flexibility, and it does allow for trust in the Legislature. We've trusted them, I think, in many areas and should trust them in this area.

Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1078.

¶25    Also speaking in support of the amendment, Delegate Arlyne Reichert quoted a speech from William Burnett, the presiding judge of the Denver County Court, discussing trials de novo:

> Take, for instance, the matter of appeals.  As lower court proceedings are traditionally not of record, appeals must involve a trial de novo in a higher court.  Thus, the person involved in a minor case becomes entitled to two complete trials at public expense.  The convicted felon or loser of the million-dollar lawsuit has no such right.  This new trial appeal, which may be had irrespective of error at the original trial, is not only costly but breeds contempt and disrespect for the lower court.  It favors the rich over the poor, the affluent over the ignorant, the dishonest over the honest.  An interesting object lesson may be drawn from our Colorado experience.  When de novo was eliminated by making the lower courts of record, appeals from our court were cut in half.  Thus, the one trial, one appeal rule is not only good justice, it is also good economy.

Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1076.  And, Delegate Paul Harlow added his support to the amendment when he stated:

> [W]ithout the amendment, this thing is contradictory and does not allow the people any flexibility in the future in regards to forming the kind of courts that they want.  You're freezing in the inferiorness of the inferior courts when you do not allow the Legislature to improve them by law.  I heartily support the amendment, and I feel all of us should if we are concerned with court improvement.

Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1077.

¶26    The Delegates to the 1972 Montana Constitutional Convention thoroughly debated whether to add the language "unless otherwise provided by law" to Article VII, Section 4(2), and what effect adding this language might have in the future on trials de novo.  After weighing and measuring the impact of this amendment, the delegates voted 62 to 32 in favor

11

of adopting it. Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1078.

¶27 Petitioner has failed to prove "beyond a reasonable doubt" that § 3-10-101(5), MCA, violates Article VII, Section 4(2). *Powell*, ¶ 13. The plain wording of Article VII, Section 4(2), and the intent of the framers in adopting that provision are unquestionable and lead to the conclusion that the actions of the Legislature in enacting § 3-10-101(5), MCA, allowing for the creation of justice's courts of record, and the Yellowstone County Board of County Commissioners in adopting Resolution No. 07-90, creating a justice's court of record in Yellowstone County, were constitutionally permissible under Article VII, Section 4(2). The elimination of appeal by trial de novo was contemplated by the Delegates, and where coupled with the requirement that a justice's court of record maintain an electronic record and that there is an appeal of legal issues to the district court, the Legislature's action does not violate Article VII, Section 4(2).

### 3. Costs and attorney fees

¶28 Petitioner argues that he should recover his attorney fees and costs under either the "private attorney general" theory adopted in *School Trust v. State ex rel. Bd. of Com'rs*, 1999 MT 263, ¶ 67, 296 Mont. 402, ¶ 67, 989 P.2d 800, ¶ 67, or the discretionary right under § 27-8-313, MCA, and *Mountain West v. Brewer* ("*Brewer*"), 2003 MT 98, 315 Mont. 231, 69 P.3d 652. Respondents argue that because Petitioner did not prevail in this action, he should not be awarded his attorney fees and costs.

¶29 Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *Brewer*, ¶ 14

12

(citing *Mountain West Farm Bureau v. Hall*, 2001 MT 314, ¶ 13, 308 Mont. 29, ¶ 13, 38 P.3d 825, ¶ 13). We have recognized equitable exceptions to the American Rule, however, including awarding attorney fees pursuant to the "private attorney general" theory. *Brewer*, ¶ 14 (citing *School Trust*, ¶ 67).

¶30 We determined in *School Trust* that the "private attorney general" theory permits an award of attorney fees, in the discretion of the court, based upon the strength or societal importance of the public policy vindicated by the litigation; the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff; and the number of people standing to benefit from the decision. *School Trust*, ¶ 66 (citing *Serrano v. Priest*, 569 P.2d 1303, 1314 (Cal. 1977)). However, we awarded attorney fees to the School Trust in that case because it "*successfully* litigated issues of importance to all Montanans and incurred significant legal costs." *School Trust*, ¶ 69 (emphasis added).

¶31 Section 27-8-313, MCA, also allows a court to award attorney fees in a declaratory judgment action when the court, in its discretion, deems such an award "necessary or proper." *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 42, 315 Mont. 210, ¶ 42, 69 P.3d 663, ¶ 42. However, we pointed out in *Brewer* that a court may award attorney fees only to a *prevailing* party. *Brewer*, ¶ 11 (citing *Kunst v. Pass*, 1998 MT 71, ¶ 38, 288 Mont. 264, ¶ 38, 957 P.2d 1, ¶ 38). Because Petitioner has not prevailed here, we hold that he is not entitled to an award of costs and attorney fees.

¶32 Based on the foregoing,

¶33 IT IS ORDERED that Petitioner's "Original Writ – Petition for Declaratory Judgment" is DENIED.

¶34  IT IS FURTHER ORDERED that Petitioner's request for an award of attorney fees and costs in his favor is DENIED.

¶35  IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Order to all counsel of record.

Dated this 15th day of July, 2008.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS