FILED

May 10 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0525

DA 14-0525

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 102

STATE OF MONTANA,

Plaintiff and Appellee,

v.

KELLY DAVIS,

Defendant and Appellant.

APPEAL FROM:     District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC-2013-62
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad M. Wright, Chief Appellate Defender, James Reavis, Assistant
Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

Bruce E. Becker, Park County Attorney, Kathleen Carrick, Deputy County
Attorney, Livingston, Montana

Submitted on Briefs:   March 23, 2016

Decided:   May 10, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Kelly Davis appeals the decision and order of the Sixth Judicial District Court, Park County, denying his motion to dismiss his misdemeanor DUI conviction. We restate the issues on appeal as follows:

    *1.  Whether Davis's trial before a non-lawyer justice of the peace violated his constitutionally-guaranteed right to due process of law.*

    *2.  Whether Davis's trial before a non-lawyer justice of the peace deprived him of his constitutionally-guaranteed right to effective assistance of counsel.*

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    On January 12, 2013, a Park County law enforcement officer arrested Davis on suspicion of Driving under the Influence of Alcohol (DUI). Two days later, the Board of Commissioners of Park County passed Resolution No. 1147, which changed the Park County Justice Court from a non-record court into a court of record, effective immediately. Appeals to a district court from a justice court of record are not taken as trials de novo. Section 3-10-115(1), MCA.

¶4    Davis was arraigned on January 24, 2013, in Park County Justice Court, Honorable Linda Budeski presiding. Budeski is not an attorney licensed to practice law in Montana. At the arraignment, Davis pleaded not guilty to DUI, second offense, in violation of § 61-8-401, MCA. A second DUI is punishable by up to one year of incarceration. Section 61-8-714(2)(a), MCA.

¶5    Davis filed a motion to dismiss in justice court arguing that the prosecution of a jailable offense before a non-lawyer judge without the option of a trial de novo before a

2

lawyer-judge violates the Due Process and Right to Counsel Clauses of the United States and Montana Constitutions. The Justice Court denied Davis's motion to dismiss.

¶6 Davis was tried in justice court before a jury and was found guilty on July 16, 2013. Thereafter, the Justice Court issued a written sentence and judgment, which Davis appealed to the District Court demanding a trial de novo. Davis also filed a motion to dismiss.

¶7 On December 10, 2013, after considering briefs on the issue from both parties, the District Court denied Davis's motion to dismiss, concluding that Davis's constitutional rights had not been violated by his trial being conducted by a non-lawyer judge in a court of record without a trial de novo.[1] We granted Davis leave to file an out of time appeal. M. R. App. P. 4(6).

## STANDARDS OF REVIEW

¶8 A district court's denial of a motion to dismiss in a criminal case presents a question of law that we review de novo for correctness. *State v. Willis*, 2008 MT 293, ¶ 11, 345 Mont. 402, 192 P.3d 691. We exercise plenary review of constitutional issues of due process and the right to counsel. *In re Mental Health of C.R.C.*, 2009 MT 125, ¶ 13, 350 Mont. 211, 207 P.3d 289.

---

[1] The same decision reversed the judgment of the Justice Court and granted Davis a new trial on the ground that Davis's right to due process was violated "by his case being changed midstream to a court of record proceeding, without formal notice to him." Following remand, Davis pled no contest, reserving the right to appeal. After another trial, the Justice Court reinstated Davis's sentence and Davis appealed again to the District Court. The District Court again treated the second appeal as an appeal of record and set a briefing schedule. Davis entered a no contest plea and filed a motion for issuance of judgment and motion to set a sentencing hearing. The District Court issued a judgment on June 20, 2014, reaffirming the Justice Court's sentence and staying execution of sentence pending appeal to this Court.

**DISCUSSION**

¶9 *1. Whether Davis's trial before a non-lawyer justice of the peace violated his constitutionally-guaranteed right to due process of law.*

¶10 Section 3-10-101(5), MCA, authorizes counties to establish justices courts as courts of record. "The court's proceedings must be recorded by electronic recording or stenographic transcription and all papers filed in a proceeding must be included in the record." Section 3-10-101(5), MCA. Pertinent here, justices courts have jurisdiction within their respective counties over "all misdemeanors punishable by a fine not exceeding $500 or imprisonment not exceeding 6 months, or both." Section 3-10-303(1)(a), MCA. Justices of the peace are not required to be licensed attorneys. *See* Sections 3-10-202, -204, 3-1-1502, MCA. In an appeal from a justice court established as a court of record, the district court functions as an appellate court and the appeal is confined to a review of the record and questions of law. Section 3-10-115(1), MCA; *Stanley v. Lemire*, 2006 MT 304, ¶ 25, 334 Mont. 489, 148 P.3d 643 (citing *State v. Seaman*, 2005 MT 307, ¶ 10, 329 Mont. 429, 124 P.3d 1137).

¶11 The District Court concluded that Davis's constitutional rights were not violated by virtue of his trial being conducted by a non-lawyer judge presiding in a court of record without the right to a trial de novo. The court concluded that Article VII, Section 4(2), of the Montana Constitution, along with our decision in *Hernandez v. Board of County Commissioners and State of Montana*, 2008 MT 251, 345 Mont. 1, 189 P.3d 638, establish that the Legislature has "the ability to provide for something other than de novo appeals in district courts." The court concluded also that the statutory scheme that allows

4

for justice court proceedings and the appeal process to district courts "ensures that the Defendant's case is reviewed by a judge with formal legal training, and any alleged errors are reviewed and subject to correction, reversal and/or remand." The court noted that other jurisdictions such as Wyoming, New Mexico, and South Carolina have concluded that defendants' due process rights are not infringed by having a non-lawyer as a judge. The District Court emphasized that justices of the peace in Montana have extensive training requirements pursuant to § 3-10-203, MCA.

¶12 The District Court determined that "[t]here is simply no constitutional right to a trial before a judge with formal training," and that "[e]ach state is vested with the authority of devising its judicial system." The court concluded that the Legislature acted within its power to establish justices courts as courts of record without requiring trial by a lawyer-judge.

¶13 As an accused person facing incarceration, Davis contends that he has a fundamental and essential right to a fair trial before a lawyer-judge because "due process requires that both the presenters and the evaluators of legal arguments in criminal trials be lawyers." Davis argues that a criminal defendant must have a "meaningful opportunity to be heard." Quoting *Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S. Ct. 55, 64 (1932), Davis asserts, "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." From this, Davis reasons that "being heard by counsel is of little avail if it does not comprehend the right to be heard by a lawyer-judge" because "[l]aypersons, by definition, lack the requisite expertise of an attorney to evaluate legal arguments." Davis concedes that governments are "free to

5

regulate the procedures of their courts in accordance with their own conception of policy and fairness," but argues that a "judge's qualifications must still meet the constitutional floor of the Due Process Clause." While Davis concedes that the right to a lawyer-judge is not explicit in the Montana Constitution, he points out that the same is true with many other fundamental rights that are essential to a fair trial, e.g., proof beyond a reasonable doubt, the right to be provided with the prosecution's material evidence, and a neutral and detached judge.

¶14 Davis refers to other states—Tennessee, Indiana, California, and Vermont—that have held that due process includes the right of a lawyer-judge for defendants facing the possibility of incarceration. In addition, Davis argues that there is "widespread recognition of the lawyer-judge right across the nation." The right to a lawyer-judge, according to Davis, began 800 years ago under the Magna Carta, which proclaimed that England would only appoint justices and constables who knew the law of the realm. According to Davis, this idea permeated through our country's history so that today "28 states require lawyer-judges to preside in all cases in which there is a possibility of incarceration . . . [and] [a]nother 16 states do permit lay judges to conduct criminal trials but provide criminal defendants with either the option of trial *de novo* before a lawyer-judge or the ability to request a trial before a lawyer-judge in the first instance." In contrast, Davis contends that only six states—Montana included—allow a non-lawyer judge to conduct criminal trials without the option of a trial de novo before a lawyer-judge. Because of this "persuasive authority," Davis contends that Montana "is not in compliance with due process."

6

¶15     Davis argues further that review by a lawyer-judge on appeal does not cure the lack of a lawyer-judge at trial because "the fundamental right to be heard must first be protected at trial."  Davis contends that much of a trial judge's work is not reviewed on appeal under a de novo standard"; rather, many rulings are reviewed for abuse of discretion or for clear error.  According to Davis, this creates the possibility that "a defendant now may be sentenced to imprisonment when a lay judge makes a mistake of law that, because of the standard of review, will evade appellate review by a lawyer-judge."  Davis argues that even if a trial court's error can be remedied on appeal, the defendant already will have gone through substantial "burden, expense, and delay," and even may have served his or her entire term of imprisonment before the appeal system can provide relief.

¶16     The State argues that the use of non-lawyer judges to "expeditiously try minor criminal offenses is consistent with longstanding, traditional common law practice."  Relying on *Snyder v. Massachusetts*, 291 U.S. 97, 54 S. Ct. 330 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964), the State contends that it is "free to regulate the procedure of its own courts in accordance with its own conception of policy and fairness unless in doing so it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  The State claims that non-lawyer judges have presided over criminal trials for jailable offenses and their decisions have been reviewed on the record for mistakes of law "for centuries in common law countries, including this one," and that "[n]either the United States Constitution nor the Montana Constitution explicitly requires judges who try minor

7

jailable offenses to be lawyers." Therefore, according to the State, a trial before a lawyer-judge "is not a practice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Relying on *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S. Ct. 2119 (1972), and *North v. Russell*, 427 U.S. 328, 96 S. Ct. 2709 (1976), the State contends that "the United States Supreme Court has never equated the guarantee of a 'fair tribunal' with any particular educational background or professional licensure, and has instead approved of lay judges wholly uneducated in the law to act as examining magistrates and to try minor jailable offenses."

¶17     The State contends that states are "free to experiment with different types of criminal justice systems so long as the system contains sufficient procedural safeguards to ensure the fundamental fairness of the proceedings." The State points out that non-lawyer judges are "extensively educated, trained, and certified in the law and their duties as judicial officers. Their proceedings are recorded, and their conclusions of law and decisions on mixed questions of fact and law—including their decisions regarding constitutional issues—are reviewed for correctness on appeal." According to the State, Davis has produced no evidence showing that Montana's non-lawyer judges "necessarily, or usually, or even probably decide legal issues without understanding the arguments of counsel or on any basis other than the sound exercise of judicial discretion in accordance with the law." Moreover, the State argues that Davis has not shown that he was prejudiced by having his trial conducted by a non-lawyer judge.

¶18     Davis takes issue with the State's argument that he was not actually prejudiced by the lack of a lawyer-judge at trial. The procedure itself, according to Davis, is

8

unconstitutional and therefore, there is no need to show actual prejudice "in order to imperil a defendant's due process [right]."

¶19 Article VII, Section 4(2), of the Montana Constitution provides in relevant part, "The district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law." In *Hernandez*, we held that the phrase "unless provided by law" in Article VII, Section 4(2), gave the Legislature "the ability to provide for something other than de novo appeals in district courts." *Hernandez*, ¶ 24. Our decision in *Hernandez* is consistent with the delegates' intentions at the 1971-1972 Montana Constitutional Convention (Convention). Convention delegates considered whether to retain justices courts and whether to require that a justice of the peace be a lawyer. Montana Constitutional Convention, Verbatim Transcript, February 26, 1972, Vol. IV, p. 1014. Delegates agreed that justices courts are important, particularly in Montana's small towns, and that justices of the peace do not have to be lawyers so long as they undergo mandatory training in the law. Montana Constitutional Convention, Verbatim Transcript, February 26, 1972, Vol. IV, pp. 1014, 1020. The delegates also specifically debated whether all justice court cases should be subject to trial anew review by a district court, or whether the legislative branch should be granted the authority to eliminate trial anew review in the future. Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, Vol. IV, pp. 1075-1078. Ultimately, the delegates chose to enable the Legislature to limit the availability of trial anew in district court. Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, Vol. IV, p. 1078; Mont. Const. art. VII, § 4(2).

9

¶20 While our decision in *Hernandez* establishes that the Legislature's creation of justices courts of record without de novo review is consistent with Article VII, Section 4(2), of the Montana Constitution, we did not decide in that case whether a trial before a non-lawyer justice of the peace without de novo appeal denies a defendant his or her constitutionally-guaranteed right to due process of law. In *North*, the United States Supreme Court addressed whether an accused, subject to possible imprisonment, is denied due process when tried before a non-lawyer judge with a later trial de novo available. *North*, 427 U.S. at 329, 96 S. Ct. at 2710. The courts at issue in that case were Kentucky's lower courts, which were not courts of record. *North*, 427 U.S. at 336 n.5, 96 S. Ct. at 2713 n.5. The Court held that such a trial does not violate due process. *North*, 427 U.S. at 339, 96 S. Ct. at 2714. *North*, however, did not address whether a trial by a non-lawyer judge in a lower court of record without the availability of a trial de novo on appeal would violate due process, and the United States Supreme Court has not yet answered that question. *See North*, 427 U.S. at 334, 96 S. Ct. at 2712. This issue is a matter of first impression for this Court; there are a number other jurisdictions, however, that have addressed it.

¶21 In *Tsiosdia v. Rainaldi*, 547 P.2d 553 (N.M. 1976), the Supreme Court of New Mexico held that having a non-lawyer judge preside over criminal cases arising from violations of municipal ordinances, which are punishable by incarceration, does not violate a defendant's due process rights. *Tsiosdia*, 547 P.2d at 554. Noting that due process "generally only requires that the tribunal be fair and impartial," the court concluded,

10

> The judge's major function is to determine which of two espoused view-points—the [defense] attorney's or the prosecutor's—is applicable to the facts of the case before him. An unbiased and reasonably intelligent person should be able to choose fairly between such espoused viewpoints. Fairness in this context is not critically dependent upon the judge being a member of the bar; a judge must have wisdom and common sense which are at least as dependable as an education in guaranteeing the defendant a fair trial. As with district court judges, as a last resort the appellate process is able to correct the mistakes of law of a municipal court judge.

*Tsiosdia*, 547 P.2d at 554-55. Similarly, the Wyoming Supreme Court held that a defendant's due process rights are not infringed by a trial before a non-attorney judge when the criminal case is recorded. *Canaday v. Wyoming*, 687 P.2d 897, 898-99 (Wyo. 1984). The court noted that even though the defendant does not have a right to a trial de novo before the district court, "the record of the proceeding provides an opportunity for a meaningful and complete judicial review by a law-trained judge." *Canaday*, 687 P.2d at 900. Other jurisdictions also have approved non-lawyer judges when a record is available for review by a lawyer-judge. *E.g.*, *Goodson v. State*, 991 P.2d 472 (Nev. 1999); *Palmer v. Super. Ct.*, 560 P.2d 797 (Ariz. 1977); *People v. Sabri*, 362 N.E.2d 739 (Ill. App. Ct. 1977); *State v. Duncan*, 238 S.E.2d 205 (S.C. 1977).

¶22 There is contrary authority from courts in Tennessee, Indiana, California, and Vermont. In *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779, 791 (Tenn. 1980), the Tennessee Supreme Court determined that the "'law of the land' provision in Article I, Section 8 of the Constitution of Tennessee does not permit a judge who is not licensed to practice law to make any disposition of a juvenile that operates to confine him or deprive him of his liberty." In *City of White House v. Whitley*, 979 S.W.2d 262, 268 (Tenn. 1998), the Tennessee Supreme Court extended the ruling from *Anglin* to prohibit

11

non-lawyer municipal and general session judges from presiding over misdemeanor cases where incarceration may be imposed. Similar to Montana, there is nothing in Tennessee's Constitution or statutes that require that all judges be licensed attorneys. *See* Tenn. Const. art. VI, § 4; Tenn. Code Ann. § 16-18-202 (2015). The dissent in *City of White House* criticized the majority for "redraft[ing] the constitution to reflect the majority's notions of fundamental fairness." *City of White House*, 979 S.W.2d 262, 270 (Holder, J., dissenting). Accordingly, the dissent would have held that "it is for the legislature and not for this Court to redraft the requirements for holding office as judge." *City of White House*, 979 S.W.2d 262, 270 (Holder, J., dissenting).

¶23 In *In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441*, 332 N.E.2d 97, 98 (Ind. 1975), the Indiana Supreme Court struck down a law that would have permitted lay judges to preside over misdemeanor cases in the county courts. The court interpreted its constitutional authority over the "discipline, removal and retirement of justices and judges," Ind. Const. art. 7, § 4, to give it "responsibility of [sic] the competence of . . . those persons sitting as justices and judges in [Indiana] state courts," *In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441*, 332 N.E.2d at 98. It noted that the legislature had failed to provide specific requirements or qualifications for lay judges. The court concluded that the legislature's attempt to require the court to fix standards less than what the court had required for attorneys violated the separation of powers doctrine. *In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441*, 332 N.E.2d at 98. In contrast, Montana's Constitution calls for the Legislature to determine

12

the qualifications and training required for justices of the peace. Mont. Const. art. VII, § 5.

¶24 In *Gordon v. Justice Court for Yuba Judicial District*, 525 P.2d 72, 79 (Cal. 1974), the California Supreme Court held that there is a right to a lawyer justice of the peace in criminal cases carrying the possibility of incarceration. The court held that an appeal from a justice court judgment was "inadequate to guarantee a fair trial since justice courts are not courts of record, and thus no transcript is ordinarily made of the original proceeding." *Gordon*, 525 P.2d at 78 (internal citation omitted). Unlike the justices courts in *Gordon*, Montana justices courts from which appeal is not by trial de novo must be courts of record. Sections 3-10-101(5), -115, MCA.

¶25 In *Vermont v. Dunkerley*, 365 A.2d 131, 132 (Vt. 1976), the Vermont Supreme Court addressed part of Vermont's uncustomary legal system that permitted three judges to preside in a trial in the superior court. Only one of the three judges was required to be a lawyer, and the votes of two non-lawyer judges could override the vote of the lawyer-judge on any legal question. *Dunkerley*, 365 A.2d at 132. The court held that such a practice was "a sufficient deviation of due process to require proscription." *Dunkerley*, 365 A.2d at 132. Different from the historical record in Montana, where the practice of non-lawyer judges was expressly debated by Convention delegates and the Legislature, the Vermont Court noted that "the fact that positions of Assistant Judges have come to be usually filled by laymen is at least partly a matter of historical accident." *Dunkerley*, 365 A.2d at 132.

13

¶26 Both the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution provide that no person shall be deprived of liberty "without due process of law."

> [I]t is normally within the power of the State to regulate procedures under which its laws are carried out . . . and its decisions in this regard [are] not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*State v. Krantz*, 241 Mont. 501, 509-10, 788 P.2d 298, 303 (1990) (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S. Ct. 2411, 2415-16 (1986) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02, 97 S. Ct. 2319, 2322 (1977))). "Historical practice" is the "primary guide" in determining whether a proposed procedural rule is so fundamental as to be required under the Due Process Clause. *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S. Ct. 2013, 2017 (1996). The common contemporary practice of some states does not automatically qualify a procedural rule as fundamental. *Egelhoff*, 518 U.S. at 49-51, 116 S. Ct. at 2020-21. "[N]ot every widespread experiment with a procedural rule favorable to criminal defendants establishes a fundamental principle of justice" even if the rule "has gained considerable acceptance" and "especially" if "it displaces a lengthy commonlaw tradition which remains supported by valid justifications today." *Egelhoff*, 518 U.S. at 51, 116 S. Ct. at 2021. In addition, "Due Process is flexible and calls for such procedural protections as the particular situation demands." *Goble v. Mont. State Fund*, 2014 MT 99, ¶ 46, 374 Mont. 453, 325 P.3d 1211 (citation and internal quotation marks omitted). It does not require that states take "every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." *Patterson*, 432 U.S. at

208, 97 S. Ct. at 2326. Rather, states are required to provide "only the most basic procedural safeguards." *Patterson*, 432 U.S. at 210, 97 S. Ct. at 2327.

¶27 We decline to adopt Davis's contention that there is a fundamental and essential right to a trial before a lawyer-judge. Our historical practice does not support the notion that a trial before a lawyer-judge is a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Krantz*, 241 Mont. at 510, 788 P.2d at 303. The 1889 Montana Constitution required that district court judges and supreme court justices be admitted to the practice of law but did not require the same of justices of the peace. Mont. Const. of 1889, art. VIII, §§ 10, 16. In 1971, despite the fact that some other jurisdictions were eliminating or reforming their justices courts, the Montana Legislature rejected a bill that would have required justices of the peace to be lawyers or otherwise trained in the law. H.B. 362, 42d Mont. Leg. Assem. § 5 (Mont. 1971). As discussed above, Convention delegates, noting the lack of lawyers in many small Montana counties, agreed that justices courts should be retained in order to provide prompt, local justice to Montanans and that justices of the peace are not required to hold a law license. Montana Constitutional Convention, Verbatim Transcript, February 26, 1972, Vol. IV, p. 1014. That some states have required that justices of the peace be licensed attorneys does not render that practice of constitutional magnitude. *Egelhoff*, 518 U.S. at 51, 116 S. Ct. at 2021.

¶28 We find persuasive the reasoning of jurisdictions that have upheld the constitutionality of non-attorney judges. Similar to New Mexico's municipal judges in *Tsiosdia*, Montana justices of the peace are required to be educated and trained in the law

15

before entering upon the duties of office. Sections 3-1-1502, 3-10-202(2), MCA. After each general election, justices of the peace must take a certification test, which covers subjects commonly encountered by judges of courts of limited jurisdiction. Rules for Courts of Limited Jurisdiction Training and Certification of Judges, Rule 6. Each justice of the peace is required to attend "two mandatory annual training sessions supervised by the supreme court." Section 3-10-203(2), MCA. "Failure to attend [the mandatory training sessions] disqualifies the justice of the peace from office and creates a vacancy in the office." Section 3-10-203(3), MCA. In addition, the Commission on Courts of Limited Jurisdiction has developed numerous educational and training resources to assist justices of the peace in their duties, including a Deskbook, a Benchbook, an evidence manual, and a DUI manual. The Commission on Courts of Limited Jurisdiction, *Courts of Limited Jurisdiction: Training Guides and Manuals*, courts.mt.gov, http://courts.mt.gov/lcourt (https://perma.cc/S7N8-G2UB). The training and testing create "procedural safeguards," *Patterson*, 432 U.S. at 210, 97 S. Ct. at 2327, to help ensure that Montana justices of the peace are "unbiased and reasonably intelligent person[s] [who] should be able to choose fairly between" two espoused viewpoints and whose "[f]airness in this context is not critically dependent upon the judge being a member of the bar," *Tsiosdia*, 547 P.2d at 555.

¶29 We conclude that, even without the right to trial de novo, a district court's appellate review procedures sufficiently safeguard a defendant's due process rights. Similar to the Wyoming Supreme Court's determination in *Canaday*, we conclude that the justice court record combined with district court appellate review provide "an

16

opportunity for a meaningful and complete judicial review by a law-trained judge." *Canaday*, 687 P.2d at 900. Montana district court judges must be admitted to practice law in Montana. Section 3-5-202(1), MCA. When acting as an appellate court, district court judges review questions of law and mixed questions of law and fact de novo. *Duffy v. State*, 2005 MT 228, ¶ 10, 328 Mont. 369, 120 P.3d 398. While evidentiary rulings and decisions regarding jury instructions generally are reviewed for an abuse of discretion, the trial court's discretion must be "guided by the rules and principles of law," and jury instructions must "fully and fairly instruct the jury on the applicable law." *State v. Ring*, 2014 MT 49, ¶¶ 12-13, 374 Mont. 109, 321 P.3d 800. To the extent a discretionary ruling is based upon a conclusion of law, review is de novo. *Ring*, ¶ 12. Factual findings are reviewed for clear error. *Stanley*, ¶ 25.

¶30 In other words, all issues involving interpretation and application of the law are decided by the appellate court on the basis of the law, without according deference to the trial court. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727 (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2536, 333 (2d ed., West 1955); *accord* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2536, 238 (2d ed., West 2006)). The deferential standards of review are reserved for such matters as determinations of fact and trial administration. Decisions that are purely discretionary are reviewed for an abuse of discretion. In matters of discretion and fact-finding, a license to practice law is not necessarily required to ensure a fair and unbiased proceeding. On appellate review, the district court has the power to "affirm, reverse, or amend any appealed order or judgment

17

and may direct the proper order or judgment to be entered or direct that a new trial or further proceeding be had in the court from which the appeal was taken." Section 3-10-115, MCA. Accordingly, with the full record of trial before it, the requisite standards of review empower the district court's lawyer-judge to ensure that appeals from justices courts are heard on a legally adequate record and that the record supports the conviction with evidence that has been received in compliance with constitutional and statutory standards.

¶31 Moreover, when a district court functions as an intermediate appellate court from a lower court of record, this Court reviews the appeal as though it was originally filed in this Court. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. We "examine the record independently of the district court's decision," reviewing the justice court's legal conclusions for correctness. *Stanley*, ¶ 26. "Our ultimate determination is whether the district court, in its review of the trial court's decision, reached the correct conclusions under the appropriate standards of review." *Stanley*, ¶ 26. Consequently, our court structure and the appeals system ensure that a defendant's case in a justices court of record includes opportunity for a complete and meaningful de novo review of legal issues by law-trained judges. We find no basis upon which to conclude that properly trained non-lawyer judges are incapable of making factual determinations or exercising discretion appropriately, or that a license to practice law would improve their ability to do so. Accordingly, we conclude that Davis's right to due process of law was not violated by having a trial before a non-lawyer justice of the peace without a trial de novo in the District Court.

¶32    *2. Whether Davis's trial before a non-lawyer justice of the peace deprived him of his constitutionally-guaranteed right to effective assistance of counsel.*

¶33    The District Court declined to find that Davis's right to counsel was violated when he was not allowed a trial de novo before a lawyer-judge.  The court concluded that "[t]he crucial factor, from the standpoint of right to counsel, is that the defendant has an attorney guarding and protecting the rights of the defendant.  Accordingly, the absence of an attorney-judge does not violate the defendant's right to counsel."

¶34    Davis argues that this Court "could" hold "that the lack of a lawyer-judge deprives criminal defendants of the right to constitutionally meaningful counsel."  Davis claims that Vermont's and Tennessee's supreme courts have found that failing to provide a lawyer-judge can violate the right to counsel.  Conceding that the Court declined in *North* to address the issue of non-lawyer justices of the peace as it may affect the right to counsel, Davis relies on Justice Stewart's dissent to conclude that an "essential assumption behind the right to counsel is that the judge 'will be able to understand what the defendant's lawyer is talking about.'" *North*, 427 U.S. at 342, 96 S. Ct. at 2716 (Stewart, J., dissenting).  Davis relies on the dissent in *Canaday* for the same proposition.

¶35    In contrast, the State argues that most courts have rejected Davis's contention that the right to trial before a lawyer-judge is a necessary corollary to the right to counsel.  The State argues that the purpose of the right to counsel is "to level the playing field at trial, not because . . . lay persons are incapable of understanding the law or presenting a competent defense because they have not attended law school and passed a bar examination."  In any event, the State points out that a judge is not an adversary and

19

therefore would "in no way level the playing field" because the judge's functions are "purely judicial," involving "evaluat[ing] the arguments presented by counsel fairly and impartially [and] exercise[ing] good judgment and discretion in deciding those arguments."

¶36 We have not yet determined whether a trial before a non-lawyer justice of the peace denies a defendant his or her constitutionally-guaranteed right to counsel. Other jurisdictions, however, have addressed the issue. Both the Kentucky Court of Appeals and the South Carolina Supreme Court have recognized,

> The function of the court is not to defend the accused, or to represent him, but to decide fairly and impartially. An accused needs counsel to defend him . . . because the government employs lawyers to prosecute him . . . . But the judge is not one of the accused's adversaries and is not there either to defend or to prosecute him. So the fact that the accused needs a lawyer to defend him does not mean that he needs to be tried before a lawyer judge.

*Ditty v. Hampton*, 490 S.W.2d 772, 774-75 (Ky. Ct. App. 1972); *Duncan*, 238 S.E.2d at 208 (quoting *Ditty*, 490 S.W.2d at 775). *Accord Amrein v. State*, 836 P.2d 862, 864 (Wyo. 1992) (concluding that "the performance of an accused's lawyer is not per se impaired when a lay judge presides over the accused's misdemeanor trial"). Similarly, in *Tsiosdia*, the New Mexico Supreme Court emphasized that due to the adversarial nature of our legal system, "the guardianship of defendant's rights lies chiefly with his attorney, not the judge." *Tsiosdia*, 547 P.2d at 555.

¶37 We find the reasoning of these jurisdictions informative to our analysis. We agree that the right to counsel stems from the notion that a balanced adversarial system—between the prosecution and the defense—is important to a fair trial. The Sixth

20

Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee the right to counsel. "The purpose of the right to counsel is to insure that the defendant receives a fair trial." *Wilson v. State*, 1999 MT 271, ¶ 12, 296 Mont. 465, 989 P.2d 813 (citing *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)), *overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817. Fairness, in the context of the right to counsel, "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063. "The right to counsel plays a crucial role in the adversarial system" because "access to counsel's skill and knowledge is necessary to accord the defendants the ample opportunity to meet the case of the prosecution." *Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063 (citation and internal quotation marks omitted).

¶38 Judges in our adversarial system play an independent and impartial role in the system. M. C. Jud. Cond., *Preamble* [1]. Judges are not one of the accused's adversaries and are not there to defend or prosecute an accused. *Ditty*, 490 S.W.2d at 775. The right to counsel serves "to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S. Ct. 1019, 1023 (1938). This protection comes from an attorney acting on the accused's behalf. As noted in Issue 1, should it occur that the arguments of a defendant or of defense counsel are heard by a non-lawyer justice of the peace, who erroneously applies the law, the defendant may appeal, demonstrate the error to the district court, and receive a new trial. Section 3-10-115, MCA.

21

¶39 Additionally, the right to counsel does not stand for the proposition that non-lawyers are incapable of understanding the law or presenting a competent defense. *See Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct 2525, 2541 (1975). A defendant may waive the right to counsel, so long as the court determines the waiver is voluntary, knowing, intelligent, and unequivocal. *City of Missoula v. Fogarty*, 2013 MT 254, ¶ 12, 371 Mont. 513, 309 P.3d 10 (citing *Faretta v. California*, 422 U.S. at 835, 95 S. Ct. at 2541; § 46-8-102, MCA). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation . . . ." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. Moreover, "it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense." *Faretta*, 422 U.S. at 834, 95 S. Ct. at 2540. We decline to interpret the right to counsel as meaning that non-lawyer judges are incapable of understanding legal arguments.

¶40 While fairness requires that a defendant has the right to be represented by legal counsel in order to meet the case of the prosecution and ensure protection of the accused's rights, it does not follow that the trial in such a case must be presided over by a lawyer. Accordingly, we conclude that requiring Davis to proceed to trial before a non-lawyer justice of the peace did not violate his constitutionally-guaranteed right to effective assistance of counsel.

22

## CONCLUSION

¶41     For the foregoing reasons, the District Court's decision and order are affirmed. We hold that Davis's trial before a non-lawyer justice of the peace, even though trial de novo was not available on appeal, did not violate his constitutional right to due process or to effective assistance of counsel.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE